[No. A125803. First Dist., Div. One. Feb. 25, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RICK CHARLES DELACY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.D., E., and F.

## COUNSEL

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MARGULIES, Acting P. J.**—Defendant Rick Charles Delacy was convicted of four counts of unlawful possession of firearms and one count of unlawful possession of ammunition. (Pen. Code,[1] §§ 12021, subd. (c)(1), 12316, subd. (b)(1).) He challenges the constitutionality of section 12021, subdivision (c)(1), which prohibits the possession of firearms by persons convicted of specified misdemeanors, contending it violates the Second Amendment right to bear arms and equal protection. He also argues his conviction under section 12316, subdivision (b)(1) must be reversed because the trial court declined to instruct the jury on a mistake of fact defense and failed to answer adequately a jury question as to the mental state element required for conviction. Finally, defendant claims certain fees and fines should be stricken from the trial court's sentencing minute order because the trial court did not orally impose them at the sentencing hearing. We affirm.

## I. BACKGROUND

Defendant's crimes were charged in two informations, arising from two separate incidents. In case No. CR142103 (the firearm case), defendant was charged with four felony counts of unlawful firearm possession. (§ 12021, subd. (c)(1).) The amended information alleged defendant's possession of firearms was unlawful because he had been convicted within the past 10 years of misdemeanor battery under section 242, one of the misdemeanors enumerated in section 12021, subdivision (c)(1).[2]

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Section 12021 restricts firearm possession by specified categories of persons, including felons and certain misdemeanants. (§ 12021, subds. (a), (c).) With exceptions not relevant here, section 12021, subdivision (c)(1) provides "any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, Section 171b, paragraph (1) of subdivision (a) of section 171c, 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 626.9, 646.9, 12023, or 12024, subdivision (b) or (d) of Section 12034, Section 12040, subdivision (b) of Section 12072, subdivision (a) of former Section 12100, Section 12220, 12320, or 12590, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant

In case No. CR142660 (the ammunition case), defendant was charged with one felony count of unlawful possession of ammunition (§ 12316, subd. (b)(1))[3] and one count of receiving stolen property (§ 496, subd. (a)). The unlawful possession charge contained allegations that defendant's possession of ammunition was unlawful because of his prior conviction and that defendant was on bail or on his own recognizance in case No. CR142103 at the time of the offense.

The firearms and ammunition were discovered during two probation searches of defendant's home in April and October 2008. During the first search, officers found four firearms, including a Remington 700, a Winchester 100, a Benelli Black Eagle, and a Savage Arms 110. When confronted, defendant told the officers, "There ain't nothing wrong with me having guns." Defendant later testified he possessed the guns for hunting. The second search uncovered shotgun shells in a camouflage bag in defendant's bedroom closet and in two storage tubs in the garage. Defendant told deputies the shells were for hunting.

Prior to trial in the firearm case, defendant moved to dismiss the information on the ground section 12021, subdivision (c)(1) violated the Second Amendment right to bear arms, as interpreted in the United States Supreme Court's decision in *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*). The trial court denied the motion, relying on *People v. Flores* (2008) 169 Cal.App.4th 568 [86 Cal.Rptr.3d 804] (*Flores*), in which the court rejected a post-*Heller* challenge to section 12021, subdivision (c)(1).

The two cases were tried separately, beginning with a jury trial in the ammunition case in January 2009. The jury found defendant guilty of unlawful possession of ammunition and found true the special allegation defendant committed the offense while on bail or on his own recognizance in case No. CR142103. He was acquitted of the receiving stolen property charge. In March 2009, after the parties waived jury trial in the firearm case, the court found defendant guilty on the four charges of unlawful firearm possession. At a consolidated sentencing hearing, imposition of sentence was suspended, and defendant was placed on three years' probation.

---

to Sections 871.5 and 1001.5 of the Welfare and Institutions Code, or of the conduct punished in paragraph (3) of subdivision (g) of Section 12072, and who, within 10 years of the conviction, owns, purchases, receives, or has in his or her possession or under his or her custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. . . ."

[3] Section 12316, subdivision (b)(1) provides: "No person prohibited from owning or possessing a firearm under Section 12021 or [other specified statutes] shall own, possess, or have under his or her custody or control, any ammunition or reloaded ammunition."

## II. DISCUSSION

### A. *Heller*

Defendant renews his Second Amendment argument, contending section 12021, subdivision (c)(1) is unconstitutional under *Heller*.

The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." In *Heller*, the Supreme Court held the Second Amendment protects an individual right "to possess and carry weapons in case of confrontation," unconnected with service in a militia. (*Heller, supra*, 554 U.S. at p. 592 [128 S.Ct. at p. 2797]; see also *id.* at pp. 627–630, 634–636 [128 S.Ct. at pp. 2817–2818, 2821–2822].) The court struck down a District of Columbia law effectively banning the possession of handguns in the home. (*Id.* at pp. 628–632 [128 S.Ct. at pp. 2817–2819].)

More recently, in *McDonald v. Chicago* (2010) 561 U.S. ___ [177 L.Ed.2d 894, 130 S.Ct. 3020] (*McDonald*), the court held the Second Amendment right recognized in *Heller* is "fully applicable to the States." (*Id.* at p. ___ [130 S.Ct. at p. 3026] (plur. opn. of Alito, J.); see *id.* at pp. ___, ___ [130 S.Ct. at pp. 3058, 3088] (conc. opn. of Thomas, J.).) A plurality of the *McDonald* court concluded the Second Amendment right applies to the states because it is "fundamental" to the American "scheme of ordered liberty" and is therefore incorporated in the due process clause of the Fourteenth Amendment. (*McDonald*, at pp. ___, ___ [130 S.Ct. at pp. 3036, 3050] (plur. opn. of Alito, J.).) In a concurring opinion, Justice Thomas agreed with the plurality's characterization of the Second Amendment right as "fundamental." (561 U.S. at p. ___ [130 S.Ct. at p. 3059] (conc. opn. of Thomas, J.).)

Although it struck down the District of Columbia handguns ban, *Heller* recognized and affirmed certain traditional limitations on the right to bear arms. As the court noted, the Second Amendment does not grant "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller, supra*, 554 U.S. at p. 626 [128 S.Ct. at p. 2816].) *Heller* identified an expressly nonexclusive list of "presumptively lawful regulatory measures," stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions nd qualifications on the commercial sale of arms." (*Id.* at pp. 626–627 & fn. 26 [128 S.Ct. at pp. 2816–2817 & fn. 26]; accord, *McDonald, supra*, 561 U.S. at p. ___ [130 S.Ct. at p. 3047] (plur. opn. of Alito, J.) [reiterating

these categories of permissible firearm regulations].) In so doing, *Heller* recognized that some individuals, presumably including felons and the mentally ill, may be "disqualified" from exercising Second Amendment rights. (*Heller*, at pp. 626–627, 635 [128 S.Ct. at pp. 2816–2817, 2822] ["Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."].)

## B. *The Second Amendment Claim*

██ The *Flores* court relied on *Heller*'s express authorization of statutes disqualifying felons from exercising Second Amendment rights to uphold the constitutionality of section 12021, subdivision (c). Although recognizing the defendant in *Flores* had been convicted of a misdemeanor, rather than a felony, the court held, "We find this [distinction] unconvincing. If, as *Heller* emphasizes, the Second Amendment permits the government to proscribe the possession of a firearm by any felon (including nonviolent offenders), we can see no principled argument that the government cannot also add certain misdemeanants, particularly those who have committed an assault by 'means of force likely to produce great bodily injury.' [Citation.] The public interest in a prohibition on firearms possession is at its apex in circumstances, as here, where a statute disarms persons who have proven unable to control violent criminal impulses. [Citations.] Consequently, we do not read *Heller* to undermine the constitutionality of Flores's section 12031 [*sic*: 12021] conviction." (*Flores, supra*, 169 Cal.App.4th at p. 575.)

Defendant argues we should apply strict constitutional scrutiny to strike down section 12021, subdivision (c)(1), contrary to the approach of *Flores*.[4] In holding the District of Columbia (D.C.) handgun ban unconstitutional, *Heller* declined to specify the standard of constitutional scrutiny applicable when a defendant challenges legislation on the ground it violates the Second Amendment right to bear arms, holding the D.C. ban would fail "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." (*Heller, supra*, 554 U.S. at pp. 628–629 [128 S.Ct. at pp. 2817–2818], fn. omitted.) The court did, however, imply that some elevated level of scrutiny was appropriate by rejecting the "rational-basis" test as too lenient. As the court reasoned in a footnote, "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." (*Id.* at p. 628, fn. 27 [128 S.Ct. at pp. 2817–2818, fn. 27].)

---

[4] When strict scrutiny applies, a law is constitutional only if it is "necessary to achieve a compelling state interest." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 [39 Cal.Rptr.3d 821, 129 P.3d 29].)

For purposes of constitutional analysis under *Heller*, however, there is a significant difference between the D.C. handgun ban and section 12021. The D.C. statute was one of general application that did not fit within the traditional regulations described by *Heller* as "presumptively lawful." (*Heller, supra*, 554 U.S. at p. 627, fn. 26 [128 S.Ct. at pp. 2816–2817, fn. 26].) In contrast, as *Flores* held, section 12021 is analogous to a prohibition on felon weapon possession, a type of restriction expressly listed by *Heller* as untouched by its holding. Relying on this reasoning, both California and federal decisions have upheld the type of "presumptively lawful" regulations identified in *Heller*, including prohibitions on firearm possession by certain "disqualified" persons, without applying constitutional scrutiny that balances the objectives of the statute against the means used to accomplish those ends. In *U.S. v. Vongxay* (9th Cir. 2010) 594 F.3d 1111 (*Vongxay*), for example, the court determined that because *Heller* held that prohibitions on possession of weapons by felons are presumptively lawful, "felons are categorically different from the individuals who have a fundamental right to bear arms . . . ." (*Vongxay*, at p. 1115, fn. omitted.) Accordingly, the court upheld the federal felon-in-possession statute (18 U.S.C. § 922(g)(1)), against a Second Amendment challenge without applying means-end scrutiny. (*Vongxay*, at p. 1115.) Earlier federal decisions had used the same rationale in upholding felon- and misdemeanant-in-possession statutes, also without applying means-end scrutiny. (E.g., *U.S. v. White* (11th Cir. 2010) 593 F.3d 1199, 1205–1206; *U.S. v. Rene E.* (1st Cir. 2009) 583 F.3d 8, 12–16 [possession by minor]; *In re U.S.* (10th Cir. 2009) 578 F.3d 1195, 1200; *U.S. v. McCane* (10th Cir. 2009) 573 F.3d 1037, 1047; *U.S. v. Anderson* (5th Cir. 2009) 559 F.3d 348, 352.)

In *People v. Yarbrough* (2008) 169 Cal.App.4th 303, 312–314 [86 Cal.Rptr.3d 674] (*Yarbrough*), this court rejected a Second Amendment challenge to the prohibition on carrying concealed firearms in section 12025, subdivision (a)(2), based on *Heller*'s approval of certain traditional regulations. We stated: "Treating as criminal defendant's concealment of a firearm under his clothing on a residential driveway that was not closed off from the public and was populated with temporary occupants falls within the 'historical tradition' of prohibiting the carrying of dangerous weapons in publicly sensitive places." (*Yarbrough*, at p. 314.) This was also the implicit reasoning of *Flores*, which did not apply means-end scrutiny in upholding section 12021, subdivision (c)(1). (*Flores, supra*, 169 Cal.App.4th at pp. 574–576; see also *People v. Villa* (2009) 178 Cal.App.4th 443, 445–448 [100 Cal.Rptr.3d 463]; *People v. James* (2009) 174 Cal.App.4th 662, 674–677 [94 Cal.Rptr.3d 576].)

The Third Circuit Court of Appeals analyzed the issue at more length in evaluating title 18 United States Code section 922(k), which prohibits the possession of weapons with obliterated serial numbers. (*U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85 (*Marzzarella*).) Analyzing *Heller*'s intent in

holding certain categories of statutes unaffected by the Second Amendment, *Marzzarella* noted there were two possible explanations. *Heller* could have meant that the categories are presumptively lawful either "because they regulate conduct outside the scope of the Second Amendment" or "because they pass muster under any standard of scrutiny." (*Marzzarella,* at p. 91.) Settling on the first alternative, the court concluded the "better reading" is "that these longstanding limitations are exceptions to the right to bear arms." (*Ibid.,* fn. omitted.) Applying this reasoning, the court held, "The endorsement [in *Heller*] of prohibitions as opposed to regulations, whose validity would turn on the presence or absence of certain circumstances, suggests felons and the mentally ill are disqualified from exercising their Second Amendment rights." (*Id.* at pp. 91–92, fn. omitted.)[5]

The lower appellate courts were therefore generally unanimous in rejecting the application of means-end scrutiny to statutes disqualifying felons and certain misdemeanants from weapons possession until an en banc decision of the Seventh Circuit Court of Appeals, *U.S. v. Skoien* (7th Cir. 2010) 614 F.3d 638 (*Skoien*) and, more recently, *U.S. v. Chester* (4th Cir. 2010) 628 F.3d 673 (*Chester*), which follows *Skoien*. In *Skoien,* the court considered the constitutionality under *Heller* of title 18 United States Code section 922(g)(9), a statute prohibiting persons convicted of misdemeanor domestic violence from possessing weapons, framing the question as "whether Congress is entitled to adopt categorical disqualifications [on weapons possession]." (*Skoien,* at p. 639.) The court rejected reliance on *Heller*'s declaration of presumptive validity for long-standing prohibitions, holding this was "precautionary language," intended only to "warn readers not to treat *Heller* as containing broader holdings than the Court set out to establish." (*Skoien,* at p. 640.) Following its own analytical route (*id.* at pp. 641–643), *Skoien* concluded that it was possible for a "categorical limit on the possession of firearms" to be constitutional (*id.* at p. 641). On the basis of footnote 27 of *Heller,* however, the court held that a valid categorical limit must satisfy more than a rational basis test. (*Skoien,* at p. 641.) Applying what it characterized as "some form of strong showing ('intermediate scrutiny,' many opinions say)," the court upheld the statute after finding it "substantially related to an important governmental objective." (*Id.* at p. 641.)

We conclude the *Skoien* approach gives too little weight to the "presumptively lawful" language of *Heller*. While *Skoien* is certainly correct the court intended to make clear through this language that its decision was limited in scope, the court was also intent on making clear *what those limits*

---

[5] Despite its holding, *Marzzarella* ultimately applied means-end scrutiny to section 922(k) of title 18 of the United States Code because the court was uncertain whether the ban on possession of altered weapons fit within the categories listed as exempt by *Heller*. (*Marzzarella, supra,* 614 F.3d at pp. 93–95.)

*are.* There is no ambiguity in the language; *Heller* states, *"nothing in our opinion should be taken to cast doubt* on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . ." or other types of traditional weapons regulation.[6] (*Heller, supra,* 554 U.S. at pp. 626–627 [128 S.Ct. at pp. 2816–2817], italics added.) As *Marzzarella* held, *Heller* intended by this language to put certain recognized prohibitions outside the ambit of the Second Amendment right it had delineated. (*Marzzarella, supra,* 614 F.3d at p. 91.) Emphasizing these limits, *Marzzarella* described the right outlined in *Heller* as "the right of *law-abiding* citizens to possess non-dangerous weapons for self-defense in the home." (*Marzzarella,* at p. 92, fn. omitted, italics added.) Stated otherwise, the right announced in *Heller* does not render invalid otherwise lawful statutes of the types enumerated. Further, because the court's enumeration of traditional regulations was expressly noted to be nonexclusive, other, similar prohibitions are unaffected as well, as *Flores* held.

The limitations of the *Skoien* approach were rapidly made clear by a subsequent decision of the same court. In *U.S. v. Williams* (7th Cir. 2010) 616 F.3d 685 (*Williams*), the court considered the constitutionality of the federal felon-in-possession ban (18 U.S.C. § 922(g)(1)). Rather than relying on the safe harbor for laws banning possession by felons in *Heller,* the court applied the intermediate scrutiny analysis it had previously adopted in *Skoien.* (*Williams,* at pp. 692–693.) Although the statute readily survived a facial challenge under that standard, the court concluded *Heller*'s reference to traditional regulations as only " 'presumptively lawful' " means such statutes are also subject to felon-by-felon "as applied" challenges. (*Williams,* at p. 692.) It therefore considered whether the defendant's prior felony was such as to justify a prohibition on his personal possession of firearms. While *Williams* upheld application of the statute because the defendant had been convicted of a "violent felony" (*id.* at p. 694), its approach raises the possibility that the federal felon-in-possession statute is invalid in the Seventh Circuit to the extent it prohibits persons convicted of nonviolent felonies from possessing weapons. (See *Williams,* at p. 693 ["we recognize that [18 U.S.C.] § 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent . . ."].) The language of *Heller* gives no hint of such flexibility.

■ We do not agree that *Heller* intended to open felon-in-possession prohibitions and similar categorical weapons possession bans to constitutional means-end scrutiny. On the contrary, following virtually all other federal and

---

[6] In any event, *Skoien* ultimately upheld the statute under consideration, a limited federal misdemeanant firearms disability statute, against the Second Amendment challenge. (*Skoien, supra,* 614 F.3d at pp. 643–645.) It therefore provides no support for concluding that section 12021, subdivision (c)(1) is invalid, regardless of the type of scrutiny applied.

California appellate courts, we read *Heller*'s "presumptively lawful" language to do just the opposite. Accordingly, if section 12021, subdivision (c)(1) falls within the "presumptively lawful" regulations of *Heller*, as *Flores* held, it is immune from means-end scrutiny.

■ As discussed above, *Flores* found subdivision (c)(1) of section 12021 to be presumptively lawful under *Heller* because "we can see no principled argument that the government cannot also add certain misdemeanants, particularly those who have committed an assault by 'means of force likely to produce great bodily injury.' [Citation.] The public interest in a prohibition on firearms possession is at its apex in circumstances, as here, where a statute disarms persons who have proven unable to control violent criminal impulses." (*Flores, supra,* 169 Cal.App.4th at p. 575; see similarly *In re U.S., supra,* 578 F.3d at p. 1200 [*Heller* categories also include those convicted of misdemeanor domestic violence because the conviction demonstrates a propensity for use of physical violence against others]; *U.S. v. White, supra,* 593 F.3d at p. 1206 [same].) Defendant distinguishes *Flores*, contending the portion of subdivision (c)(1) banning persons convicted of misdemeanor battery from possessing weapons is not within the *Heller* exemption because misdemeanor battery requires only a "simple touching" and "does not necessarily entail violence," in contrast to the predicate assault in *Flores.*[7] We disagree with the characterization of battery as a nonviolent offense. Battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) As the trial court noted in denying defendant's motion to dismiss, battery, like assault, "presents a threat to public safety." ■ As *Flores* held, if the Second Amendment permits the government to prohibit all felons (including nonviolent offenders) from possessing firearms, there is no reason the government cannot also prohibit firearm possession by misdemeanants who have shown a propensity to commit violence against others.[8]

■ Finally, contrary to defendant's argument, we do not find any inconsistency or irrationality in the California rule permitting a person who is generally prohibited from possessing a firearm to use one in self-defense. (See *People v. King* (1978) 22 Cal.3d 12, 24 [148 Cal.Rptr. 409, 582 P.2d

[7] Defendant characterizes this as an "as applied" challenge. We conclude section 12021, subdivision (c)(1) is immune to such challenges if it is within the *Heller* safe harbor. Further, defendant has made no showing as to the nature or magnitude of the force he used in connection with his predicate offense.

[8] Defendant also makes what he characterizes as a "facial" constitutional challenge, but it fails because it does not assert " ' "[the] statute is invalid on its face and . . . incapable of any valid application." ' " (*Yarbrough, supra,* 169 Cal.App.4th at p. 311.) As discussed above, he claims only that section 12021, subdivision (c)(1) cannot constitutionally be applied to any person convicted of a "nonviolent misdemeanor." He does not argue section 12021, subdivision (c)(1) cannot constitutionally be applied to a person convicted of a violent misdemeanor, such as the defendant in *Flores*. (See *Flores, supra,* 169 Cal.App.4th at pp. 574–575.)

1000] (*King*).) As defendant acknowledges, the *King* rule does not permit such a disqualified person to possess a firearm in anticipation of using it one day in self-defense. (See *People v. McClindon* (1980) 114 Cal.App.3d 336, 339–340 [170 Cal.Rptr. 492].) Instead, *King* only recognized "when a member of one of the affected classes is in imminent peril of great bodily harm or reasonably believes himself or others to be in such danger, and without preconceived design on his part a firearm is made available to him, his temporary possession of that weapon for a period no longer than that in which the necessity or apparent necessity to use it in self-defense continues, does not violate section 12021." (*King*, at p. 24.) This limited exception to the general rule prohibiting firearm possession by persons convicted of certain crimes does not render section 12021, subdivision (c)(1) irrational or otherwise unconstitutional, nor does it bolster defendant's efforts to bring himself within the holding in *Heller*. As discussed above, *Heller* protects a right to keep and bear arms for self-defense in the home for persons who are *not* otherwise disqualified from possessing firearms. (See *Heller, supra*, 554 U.S. at pp. 627 & fn. 26, 635–636 [128 S.Ct. at pp. 2816–2817 & fn. 26, 2822].) Under section 12021, subdivision (c)(1), defendant is disqualified from exercising Second Amendment rights.

## C. *Equal Protection*

Defendant next argues section 12021, subdivision (c)(1) violates equal protection because it prohibits firearm possession by persons convicted of the California misdemeanors specified in the statute, but not by persons convicted of similar offenses in other jurisdictions. In contrast to this subdivision, the provision of section 12021 barring firearm possession by convicted felons, subdivision (a)(1), applies to any person convicted of a felony "under the laws of the United States, the State of California, or any other state, government, or country . . . ." Defendant argues "[t]here is no reason to believe that persons convicted of the specified California misdemeanors are any more likely to commit anti-social acts with firearms than persons who have committed equivalent offenses out of state."

We note defendant did not raise an equal protection challenge in the trial court. His motion to dismiss the firearm charges raised only a Second Amendment challenge to section 12021, subdivision (c)(1). The Attorney General, however, does not argue defendant forfeited his equal protection argument. We conclude defendant did not forfeit this argument, and we will consider it on the merits, because "the issue is still one of law presented by undisputed facts in the record before us that does not require the scrutiny of individual circumstances, but instead requires the review of abstract and generalized legal concepts—a task that is suited to the role of an appellate court. [Citations.] We also confront the issue to avert any claim of inadequate assistance of counsel." (*Yarbrough, supra*, 169 Cal.App.4th at pp. 310–311.)

■ "The crux of the constitutional promise of equal protection is that persons similarly situated shall be treated equally by the laws. [Citation.] However, neither clause [of the United States or California Constitutions] prohibits legislative bodies from making classifications; they simply require that laws or other governmental regulations be justified by sufficient reasons. The necessary quantum of such reasons varies, depending on the nature of the classification." (*In re Evans* (1996) 49 Cal.App.4th 1263, 1270 [57 Cal.Rptr.2d 314] (*Evans*).) "In considering whether state legislation violates the Equal Protection Clause . . . , we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations.] Classifications based on race or national origin, [citation] and classifications affecting fundamental rights [citation], are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." (*Clark v. Jeter* (1988) 486 U.S. 456, 461 [100 L.Ed.2d 465, 108 S.Ct. 1910].) "[M]ost legislation challenged under the equal protection clause is evaluated merely for the existence of a 'rational basis' supporting its enactment. [Citations.] Under the latter analysis, the question is whether the classification bears a fair relationship to a legitimate public purpose." (*Evans*, at p. 1270; see similarly *People v. McKee* (2010) 47 Cal.4th 1172, 1211, fn. 14 [104 Cal.Rptr.3d 427, 223 P.3d 566].)

In the absence of a suspect class or a fundamental right, defendant's equal protection challenge to section 12021 would be evaluated under the rational basis test. In *Evans*, for example, the court considered an equal protection challenge to the provisions of section 12021, subdivision (c)(1) permitting certain individuals to seek relief from the statute's prohibition on firearm possession. (*Evans, supra,* 49 Cal.App.4th at pp. 1269–1274.) In holding the classification should be analyzed under the rational basis test, the *Evans* court explained strict scrutiny is inapplicable because "[t]he classification of misdemeanants does not involve a typically suspect classification such as race or sex" and "[t]he *private* right to bear arms is not a 'fundamental' right" under the Second Amendment. (*Evans*, at p. 1270.)

The United States Supreme Court's recent Second Amendment jurisprudence has called into question the latter conclusion. Following its determination in *Heller* that the right to bear arms is a private right guaranteed by the Second Amendment (*Heller, supra,* 554 U.S. at p. 591 [128 S.Ct. at p. 2797]), the court held in *McDonald* that this right is "fundamental" for purposes of incorporation in the due process clause of the Fourteenth Amendment. (See *McDonald, supra,* 561 U.S. at pp. ___, ___ [130 S.Ct. at pp. 3036, 3050] (plur. opn. of Alito, J.); see also *id.* at p. ___ [130 S.Ct. at p. 3059] (conc. opn. of Thomas, J.).) Because section 12021, subdivision (c)(1) deprives certain misdemeanants of this right for a period of 10 years, it could be

argued that the statute "affects" a fundamental right and, for that reason, is subject to strict scrutiny under traditional doctrine. (E.g., *Clark v. Jeter, supra,* 486 U.S. at p. 461.)

■ This issue was addressed recently by the Ninth Circuit in *Vongxay, supra,* 594 F.3d 1111, in which the defendant raised an equal protection challenge to the federal felon-in-possession statute. (*Id.* at p. 1118.) The court rejected the defendant's argument that strict scrutiny should apply, reasoning the statute did not affect a fundamental right because the defendant belonged to the class of persons who may be disqualified from exercising Second Amendment rights under *Heller.* As the Ninth Circuit explained: "[T]he Supreme Court has purposefully differentiated the right to bear arms generally from the more limited right held by felons. [Citation.] Therefore, whatever standard of review the Court implicitly applied to Heller's right to keep arms in his home is inapplicable to Vongxay, a felon who was explicitly excluded from *Heller*'s holding." (*Vongxay,* at p. 1118.) The *Vongxay* court accordingly applied pre-*Heller* case law, specifically *Lewis v. United States* (1980) 445 U.S. 55 [63 L.Ed.2d 198, 100 S.Ct. 915], that had established rational basis as the standard of scrutiny for equal protection challenges relating to the right to bear arms. (*Vongxay,* at pp. 1118–1119; see similarly *Warden v. Nickels* (W.D.Wn. 2010) 697 F.Supp.2d 1221, 1226–1227 [applying rational basis test to equal protection claim regarding weapons possession].) We find the *Vongxay* analysis persuasive and follow it here.
■ Because misdemeanants subject to section 12021, subdivision (c)(1) are disqualified to the same extent as felons from exercising Second Amendment rights (*Flores, supra,* 169 Cal.App.4th at p. 575), they can claim no "fundamental" right that would invoke elevated scrutiny under the equal protection clause. As a result, the statute is subject only to a rational basis analysis.

We find no basis for applying intermediate scrutiny under the authority of *Skoien* and *Chester,* the primary authorities cited by the dissent. As discussed above, *Skoien* rejected, wrongly in our view, any consideration of the presumption of lawfulness afforded certain traditional regulations by *Heller.* The dissent fails to mention *Heller*'s singling out of certain traditional regulations as presumptively lawful, let alone to explain why section 12021, subdivision (c)(1) does not fall within those categories.[9] Yet even if we accept *Skoien* on its own terms, it would not require the application of intermediate scrutiny in the context of an equal protection challenge, as the

---

[9] In footnote 3, the dissent notes that "*Heller* seems to have no quarrel with felon restrictions," implying that *Heller*'s disqualification reaches only felon-in-possession statutes, not those affecting misdemeanants. As noted above, we agree with *Flores, supra,* 169 Cal.App.4th 568, 575, that the reasoning in *Heller* that insulates felon-in-possession statutes applies as well to statutes governing misdemeanants.

dissent concludes. *Skoien* and *Chester* featured Second Amendment challenges to the federal weapons possession ban for persons convicted of misdemeanor domestic violence. The defendants in *Skoien* and *Chester* raised no claims under the Fifth or Fourteenth Amendments, which contain the guarantee of equal protection. Had equal protection claims been raised, these courts may well have applied a different level of scrutiny than they applied to the Second Amendment claims, since the respective claims arise under different constitutional provisions and are subject to different governing authority. In any event, because no equal protection claim was made in *Skoien* and *Chester*, these decisions provide no authority for applying elevated scrutiny to defendant's equal protection claim here.[10]

██ Having settled the level of scrutiny, we turn to the substance of the argument. Under the rational basis test, the question is whether the Legislature's differing treatment of similarly situated groups bears a fair relationship to a legitimate public purpose. (See *Evans, supra,* 49 Cal.App.4th at p. 1270.) We find two separate rational bases for the failure of section 12021, subdivision (c)(1) to include out-of-state misdemeanants. Critical to both these justifications is the widely varying nature of misdemeanor crimes. It is no accident that section 12021 precludes *all* felons, regardless of the nature or jurisdiction of their felony, from possessing guns (*id.,* subd. (a)(1)), but does not similarly preclude all misdemeanants. Instead, subdivision (c)(1) carefully enumerates the particular misdemeanors that disqualify a person from weapons possession. The Legislature has made a judgment that all crimes serious enough to be classified as felonies are serious enough to justify depriving persons committing those crimes of the right to bear arms. Conversely, the careful discrimination among misdemeanor crimes in subdivision (c)(1) reflects the Legislature's recognition that not all misdemeanors, which vary widely in substance and seriousness, suggest that the violator cannot responsibly possess weapons.

This diversity has two consequences. First, it raises the concern that other jurisdictions might not treat misdemeanor crimes, or at least some misdemeanor crimes, with the same level of due process afforded in California. California law restricts possession of firearms by persons convicted of the misdemeanors enumerated in section 12021, subdivision (c)(1) only after providing representation by counsel (see *Rodriguez v. Municipal Court* (1972) 25 Cal.App.3d 521, 527 [102 Cal.Rptr. 45] [defendant charged with any misdemeanor has right to counsel under Cal. Const.]) and notice of the

---

[10] Ultimately, application of heightened scrutiny is not essential to the equal protection analysis of the dissent. Because the dissent concludes there is no rational basis for excluding out-of-state misdemeanants from section 12021, subdivision (c)(1), its analysis would find the statute unconstitutional wholly apart from *Heller* and the Second Amendment.

weapons restriction (§ 12021, subd. (d)(2)). Such protections, particularly the latter requirement, may not be afforded in other jurisdictions.[11]

Second, the diversity makes identifying parallel misdemeanors in other states a daunting task. Enumerating the misdemeanors subject to the section 12021 ban for each state individually, as subdivision (c)(1) does for California, would be difficult, if not impossible, because it requires the careful parsing of the criminal codes of 49 other states. The Legislature cannot be required to scrutinize each state's laws to determine whether misdemeanors exist that are identical to the California misdemeanors listed in subdivision (c)(1). In theory, the Legislature could have identified general classes of out-of-state misdemeanors subject to the ban. By identifying individual misdemeanors in subdivision (c)(1), however, the Legislature has already indicated that listing general classes of misdemeanors is not a satisfactory approach. If that were sufficient, the Legislature could have listed general classes for California misdemeanors rather than specifically enumerating them. Further, even if the Legislature could identify general categories of out-of-state misdemeanors, the elements of the offenses may differ among the states, making it difficult for an offender to know whether a particular out-of-state misdemeanor is included in a category subject to the ban, and thereby raising issues of due process. (See *U.S. v. Moore* (7th Cir. 2008) 543 F.3d 891, 897.) In short, as a practical matter it would be difficult for the Legislature to extend section 12021, subdivision (c)(1) to misdemeanor crimes committed in other states in a fair and equitable manner.[12]

▆▆▆ Both of these concerns, the protection of a defendant's due process rights and the difficulty of crafting effective legislation, constitute legitimate governmental concerns that are sufficient to justify the Legislature's decision

---

[11] The dissent argues there was no evidence in the record that defendant was provided the required warning at the time of his conviction. Whether defendant was personally afforded the warnings, however, is irrelevant to the equal protection argument. Provision of the warning is required by statute in California, but it would likely not be provided in other jurisdictions. This distinction alone provides a rational basis for the Legislature's failure to include out-of-state convictions in the statute, regardless of whether defendant personally received the required warning.

[12] The dissent cites two decisions finding statutes unconstitutional because they made distinctions that were not supported by a rational basis. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424 [110 Cal.Rptr.3d 498]; *Doe v. Saenz* (2006) 140 Cal.App.4th 960 [45 Cal.Rptr.3d 126].) Our decision is not in conflict with either of these decisions, which feature considerably different circumstances. In *Walgreen*, the court held that a local ordinance banning tobacco sales in traditional pharmacies but not other retail stores containing a pharmacy made an irrational distinction. (*Walgreen*, at pp. 437–444.) In *Saenz*, the court found irrational a statute that disqualified persons who committed potentially nonviolent crimes from working in community care facilities but not persons convicted of more serious, violent crimes. (*Id.* at pp. 991–993.)

not to include out-of-state misdemeanants under section 12021. Accordingly, the statute does not deny defendant equal protection of the laws by excluding such persons.[13]

In this connection, we note the United States Supreme Court has upheld federal firearm disability law sentencing enhancements despite recognizing they can result in different enhancements for similar circumstances, depending upon the state of the defendant's original conviction. In *Logan v. United States* (2007) 552 U.S. 23 [169 L.Ed.2d 432, 128 S.Ct. 475], the defendant argued his sentence enhancement under section 924(e)(1) of title 18 of the United States Code was invalid because his prior conviction would have been disregarded had he been convicted in certain other states. (*Logan,* at p. 26.) After reviewing the statutory history, the court upheld the enhancement, concluding Congress had a valid reason for structuring the statute in the manner it selected. (*Id.* at pp. 35–36.) In the same way, the different consequences from in-state and out-of-state misdemeanor convictions under section 12021, subdivision (c)(1) must be upheld because our Legislature could have had valid reasons for its legislative decision.

D.–F.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The judgment is affirmed.

Banke, J., concurred.

**DONDERO, J.,** Dissenting.—I respectfully dissent.

My objection to the majority will focus on the analysis of the equal protection issue in the opinion. I do not need to discuss defendant's Second Amendment challenge to the statute because, in my opinion, Penal Code section 12021, subdivision (c),[1] cannot withstand scrutiny under the equal protection clause of the Fourteenth Amendment.

---

[13] A conclusion that the failure to include out-of-state misdemeanants is not supported by a rational basis would have ramifications beyond section 12021, subdivision (c)(1), since it suggests that other statutes relying only on in-state convictions are similarly invalid. Most notable among these is section 12021, subdivision (e), which precludes firearms possession by juveniles who have committed certain California offenses.

[*]See footnote, *ante,* page 1481.

[1] All statutory references will be to the Penal Code unless otherwise stated.

This is a case where defendant sustained a misdemeanor conviction in California for a violation of section 242 (battery) in 2006. He was placed on probation. In April 2008, while conducting a probation search, officers found four rifles in defendant's home. They were a Remington 700, a Winchester 100, a Benelli Black Eagle, and a Savage Arms 110. Defendant claimed he used the rifles for hunting game. He testified accordingly. He also represented to the officers he was never advised he could not possess weapons for hunting purposes. He was subsequently charged with a violation of section 12021, subdivision (c)(1), a felony, because he had previously been convicted of the misdemeanor battery offense in California within the past 10 years. The equal protection dilemma posed by section 12021, subdivision (c) is that it only imposes its consequences on persons who have sustained a conviction for certain enumerated misdemeanors in California. A conviction for similar misdemeanor conduct in other jurisdictions imposes no comparable consequence to a convicted individual.

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 [39 Cal.Rptr.3d 821, 129 P.3d 29], original italics; see also *People v. Dial* (2004) 123 Cal.App.4th 1116, 1120 [20 Cal.Rptr.3d 573]; *People v. Calhoun* (2004) 118 Cal.App.4th 519, 529 [13 Cal.Rptr.3d 166].) "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].) "Persons who are similarly situated must be treated alike. [Citation.] There is, however, no requirement that persons in different circumstances must be treated as if their situations were similar." (*People v. McCain* (1995) 36 Cal.App.4th 817, 819 [42 Cal.Rptr.2d 779].) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202 [104 Cal.Rptr.3d 427, 223 P.3d 566].)

The majority seems to agree that section 12021, subdivision (c)(1) creates a classification among persons similarly situated, and a glaring classification it is. The statute makes it a felony for a person who previously was convicted of specific California misdemeanors to possess a firearm within 10 years of

that conviction. Several of the enumerated crimes are wobblers, and if a person was convicted of these crimes as felonies, then the person would be charged under section 12021, subdivision (a), a statute that makes felony convictions in California or any other state or federally based jurisdiction a predicate for felony prosecution for possession of a firearm. The equal protection dilemma posed by section 12021, subdivision (c) is that it only imposes its consequences on persons who have sustained a conviction for certain enumerated misdemeanors in California. A conviction for similar misdemeanor conduct in other jurisdictions imposes no comparable consequence to a convicted individual.

However, persons who come to California after being convicted of a misdemeanor-like battery in another state can lawfully possess a firearm without a fear of felony prosecution. Only persons who sustain a conviction of section 242, for example, face potential felony prosecution.

Thus, for purposes of creating a felony offense for possession of a firearm that would otherwise be lawful, the statute treats differently defendants who have committed prior misdemeanor offenses in California, and those who have committed the same prior offenses in other states, with only the former incurring criminal sanctions. This is disparate treatment for similar conduct distinguished only by the fortuity of the geographical place of commission.[2]

In the recent decision of *People v. Hofsheier, supra,* 37 Cal.4th 1185, the court found violative of equal protection a statutory scheme which imposed mandatory registration under section 290 for a person convicted of consensual oral copulation under section 288a, subdivision (b)(1) (voluntary sexual act with a minor 16 years or older) but discretionary registration for a person convicted of consensual sexual intercourse under section 261.5. In each instance the criminal conduct is by law consensual, but the conviction of one triggers the mandatory lifetime registration requirement, while the other permits discretionary registration if the sentencing judge determines it is appropriate. Under our notion of equal protection of the laws, the state must advance "some rationality in the nature of the class singled out" for particular criminal prosecution. (*Rinaldi v. Yeager* (1966) 384 U.S. 305, 308–309 [16 L.Ed.2d 577, 86 S.Ct. 1497].) Otherwise, the state would be allowed to discriminate between persons similarly situated by classifying their conduct under different criminal statutes. (*Lawrence v. Texas* (2003) 539 U.S. 558, 582 [156 L.Ed.2d 508, 123 S.Ct. 2472] (conc. opn. of O'Connor, J.).)

---

[2] To further illustrate the point: A resident of Truckee, California, who is convicted of a qualifying misdemeanor battery offense, then some years later is found in possession of firearms, is subject to a *felony* conviction under section 12021, subdivision (c); in contrast, a resident of Reno, Nevada, 31 miles away, who is convicted of the same misdemeanor offense, and years later becomes a resident of Truckee, California, may possess the same firearms with no criminal penalty.

Also, in *People v. McKee*, the defendant challenged his involuntary commitment as a sexually violent predator (SVP) under Welfare & Institutions Code section 6600 et seq. He claimed it violated his equal protection rights because persons committed under the SVP determinations are treated less favorably than individuals similarly situated under civil commitment statutes like NGI (not guilty by reason of insanity) and MDO (mentally disordered offender). The court remanded defendant's case back to the trial court because the claim had "merit" and required further review. (*People v. McKee, supra*, 47 Cal.4th 1172, 1196.) The court reasoned that persons civilly committed under SVP, NGI or MDO statutes pose substantial harm to the community. Yet, SVP commitments, especially as a result of Proposition 83, enjoy less opportunity to challenge the designation under the statutory scheme. Conceding the statutory differences between civil commitments under SVP and MDO statutes, the court observed, "the identification of [these] differences does not explain why one class should bear a substantially greater burden in obtaining release from commitment than the other." (*People v. McKee, supra*, at p. 1203.)

Here, defendant's underlying offense is misdemeanor battery in violation of section 242. The facts and circumstances of the underlying conviction are not presented in the record of this case. We cannot determine if the predicate misdemeanor offense involved a weapon of any type, or whether the offense involved any facts which suggested a weapons preclusion order was proper. It was a probation sentence, and we do know the conditions of probation did not specifically preclude possession of any weapons. Defendant did testify he understood he could possess the rifles in issue for hunting purposes. He was not impeached in his cross-examination with any documents or transcript challenging his belief he could keep weapons in his home. We also know that if defendant had been convicted of the equivalent of section 242 in Arizona or Nevada, for example, this possession case would not be on review now.

In summary, we have a situation where similarly situated persons, i.e., persons convicted of battery in California, and persons convicted of battery in any other state—both persons currently living in California—would result in disparate consequences because of where the individual suffered his misdemeanor conviction. This satisfied the first prerequisite for a meritorious claim under the equal protection clause, a classification that affects two similarly situated groups in an unequal manner. (*Cooley v. Superior Court, supra*, 29 Cal.4th 228, 253; *In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549].)

We turn to an examination of the second level of equal protection analysis. " 'In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment . . . we apply different levels of scrutiny to

different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations.] Classifications based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy. [Citations.]' (*Clark v. Jeter* (1988) 486 U.S. 456, 461 [100 L.Ed.2d 465, 108 S.Ct. 1910]; see also *Manduley* [*v. Superior Court* (2002)] 27 Cal.4th [537,] 571 [33 Cal.Rptr.2d 10, 41 P.3d 3] ['equal protection provisions in the California Constitution "have been generally thought . . . to be substantially [the] equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution." ' (Fn. omitted.)].)" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836–837 [16 Cal.Rptr.3d 420, 94 P.3d 551].)

With the recent rulings by the United States Supreme Court interpreting the Second Amendment, namely, *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637, 128 S.Ct. 2783] (*Heller*), and *McDonald v. Chicago* (2010) 561 U.S. ___ [177 L.Ed.2d 894, 130 S.Ct. 3020], courts must now consider what standard of review is constitutionally mandated in the evaluation of gun control legislation. As the majority in *Heller* observed: "Obviously, the [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or *the right to keep and bear arms*. . . . If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." (*Heller, supra*, at p. 628, fn. 27, italics added, citation omitted.) It appears that the rational basis test may not apply to such review in light of *Heller*'s warning that constitutional rights guaranteed by the Second Amendment need to be assessed by a standard more elevated than rational basis. Indeed, the federal courts have recently indicated the test is one of heightened or intermediate scrutiny. (*U.S. v. Skoien* (7th Cir. 2010) 614 F.3d 638, 641 (en banc) [federal prosecution under 18 U.S.C. § 922(g)(9) (illegal possession of a firearm after being previously convicted of a crime of domestic violence)]; *U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 96 [federal conviction, 18 U.S.C. § 922(k) (possession of a handgun with obliterated serial number)]; *U.S. v. Chester* (4th Cir. 2010) 628 F.3d 673 [federal domestic violence misdemeanor evaluated under intermediate scrutiny]; *Peruta v. County of San Diego* (S.D.Cal. 2010) 678 F.Supp.2d 1046, 1057–1058.)[3] This conclusion makes sense. While Second Amendment

[3] The majority refers to *U.S. v. Vongxay* (9th Cir. 2010) 594 F.3d 1111 for support on the issue of equal protection. However, that case dealt with the federal felon-in-possession statute. (*Id.* at p. 1118.) *Heller* seems to have no quarrel with felon restrictions. Additionally, as noted,

rights are not evaluated by strict scrutiny standards like regulations involving race, speech or alienage, they are enumerated specifically in the Constitution and considered as fundamental and individual. (See generally, *Clark v. Jeter, supra,* 486 U.S. 456, 461.) "To withstand intermediate scrutiny, a statutory classification must be *substantially* related to an important governmental objective." (*Ibid.,* italics added.)

Since this case involves the Second Amendment right of an individual to possess a firearm, as discussed above, the standard of review is intermediate or heightened scrutiny, a discussion absent in the majority opinion. Additionally, while *Heller* indicates there may be historical grounds for precluding convicted felons or mentally ill persons from possessing firearms, there is no evidence that individuals convicted of misdemeanors were precluded historically from possessing guns and rifles. Indeed, the value and necessity of rifles from the musket to the Winchester is almost mythical in the nation's saga. Also, the weapons here were rifles located in defendant's home. Consequently, we are not dealing with issues concerning a restriction on possession of firearms in a public place or location. Furthermore, we do not have an issue of commercial transactions in weapons where the state may wish to license such conduct. Based on this record, we cannot say defendant used any weapons in a violent act, domestic or otherwise, or a transaction involving illegal substances. Nor is there evidence in this record defendant was engaged in violent conduct previously, save a violation of section 242. The only evidence we have in this record is defendant had certain rifles in his home which he used for hunting purposes, and which he believed he had the right to possess for such purposes.

Consequently, I believe under the heightened scrutiny required for a restriction of a Second Amendment right, the government cannot justify this statute under the equal protection clause of the Fourteenth Amendment.

Indeed, I can go further, without conceding the issue of scrutiny. Even if the rational relationship test is the proper standard of review here, the government cannot present a reasonably conceivable state of facts that could

---

almost all federal courts have opted to require an intermediate or heightened scrutiny analysis in this area. "Previously the Supreme Court used the rational basis standard of review to uphold a predecessor felon in possession statute against a Due Process claim. [*Lewis v. United States* (1980) 445 U.S. 55 [63 L.Ed.2d 198, 100 S.Ct. 915].] . . . [S]everal courts suggest that the intermediate test is now applicable when evaluating a *Heller*-based equal protection challenge. *See United States v. Schultz,* 2009 WL 35225 at \*5; see also *United States v. Bledsoe,* No. SA08-CR-13(2), 2008 WL 3538717 (W.D.Tx. August 8, 2008). This court agrees that [the statute] should be reviewed under intermediate scrutiny." (*United States v. Radencich* (N.D.Ind., Jan. 20, 2009, No. 3:08-CR-00048(01)RM) 2009 WL 127648, p. \*4.) Importantly, *Vongxay* did not face a felony statute that criminalized only individuals convicted in one state, while excusing the same classes of convicted persons in all the other states.

provide a rational basis for the classification. (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482 [97 Cal.Rptr.2d 334, 2 P.3d 581].) If there are no plausible reasons for the classification, the classification must fail. (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 113 S.Ct. 2096].) For example, a drugstore owner properly challenged a county ordinance that banned the sale of tobacco products at drugstores but not at grocery stores or "big box" stores containing licensed pharmacies on equal protection grounds. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 439 [110 Cal.Rptr.3d 498].) And a statutory licensing scheme that imposes greater employment restrictions on care providers who had first degree burglary and second degree robbery convictions while not imposing the same on those convicted of murder, voluntary manslaughter, mayhem, or crimes involving the use of a handgun was also found to violate the equal protection clause. (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 991–992 [45 Cal.Rptr.3d 126].)

It simply cannot be considered a valid argument that individuals convicted of the enumerated misdemeanors in section 12021, subdivision (c) are more likely to use firearms improperly than those who commit similar crimes in the other states or federal jurisdictions and now reside in California. Geography does not determine dangerousness or likelihood of felonious behavior; yet that is the singular basis for the classification in section 12021, subdivision (c).

The majority argues that California provides due process protections such as the appointment of counsel and admonitions that advise California defendants they could be prosecuted for a felony if they possess firearms after the misdemeanor conviction. As to the latter contention, there is no evidence defendant here was ever advised he could not possess any firearm as a result of his battery conviction. The evidence of such admonition would be easy to establish with a transcript of the battery plea or sentencing. Yet the record is silent on this battery prior. In fact, the only evidence in this record is defendant believed he could keep his rifles in his home, as he testified. Regarding the appointment of counsel argument, we need to acknowledge all states, under the Fourteenth Amendment, are obligated to provide a defendant the right to counsel when one's liberty is at issue. (*Argersinger v. Hamlin* (1972) 407 U.S. 25, 37 [32 L.Ed.2d 530, 92 S.Ct. 2006]; *Gideon v. Wainwright* (1963) 372 U.S. 335, 341 [9 L.Ed.2d 799, 83 S.Ct. 792].) Alternatively, this record does not reflect defendant had the assistance of counsel when he was convicted of the misdemeanor prior. And even if the record established defendant had been duly advised of the consequences of possession of a firearm imposed by section 12021, subdivision (c), the admonishment would not cure the equal protection violation associated with the disparate treatment given to California and out-of-state misdemeanants. (See *People v. McKee, supra,* 47 Cal.4th 1172, 1203–1207 [providing certain "guarantees" does not necessarily satisfy equal protection requirements].)

It is also true the problems we discuss here can be easily resolved with legislative action. The Congress has previously determined that federal law should preclude persons previously convicted of a crime involving domestic violence from possessing a firearm. Under title 18 United States Code section 922(g)(9), it is a crime for any person "who has been convicted in any court of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition." Under section 921(a)(33)(A), the term " 'misdemeanor crime of domestic violence' " means an offense that "is a misdemeanor under Federal, State, or Tribal law," and has an element of the use or attempted use of physical force or the threatened use of a deadly weapon on a particular group like a spouse, parent or partner. In other words, a broad definition of the class of crimes of other jurisdictions would resolve the equal protection issues of this statute. (*United States v. Hayes* (2009) 555 U.S. 415 [172 L.Ed.2d 816, 129 S.Ct. 1079].) Additionally, this was the approach used by the California Legislature in section 12021, subdivision (a), dealing with prior felony convictions that serve as a predicate for prohibiting subsequent firearm possession. As section 12021, subdivision (a)(1), states: "Any person who has been convicted of a felony under the laws of the United States, the State of California, *or any other state, government, or country* . . . is guilty of a felony." (Italics added.) Clearly, the fix to this equal protection problem is simple and has been done by our Legislature as well as the Congress. The two statutes indicated above avoid the equal protection issue and allow for similarly situated classes of convicted misdemeanants to be equally and fairly treated.

The majority contends this suggested fix would require local prosecutors to review statutes and records from other states or jurisdictions before they could make charging decisions. However, that review has already been adopted by federal prosecutors in the class of title 18 United States Code section 922(g) cases and the California Legislature has obligated prosecutors to assess "felony" convictions in "any other state, government, or country" under section 12021, subdivision (a)(1). Again, we are focusing on an enumerated right that is entitled to heightened scrutiny before it may be regulated by the Legislature. It is not a simple restriction on commercial behavior that is reviewed by the rational basis test. And, the burden to check records from other states is little enough to ask where failure to do so unequally subjects only those with California prior misdemeanor convictions to felony prosecution. In my view, the majority has not established a satisfactory and legally valid basis to discriminate, for purposes of the right to keep and bear arms, between similarly situated persons, previously convicted of a similar misdemeanor in California and another state, who then reside in this state.

Therefore, this conviction must be reversed because section 12021, subdivision (c)(1), is unconstitutional.

Appellant's petition for review by the Supreme Court was denied June 8, 2011, S191745. Kennard, J., was of the opinion that the petition should be granted.