Filed 6/23/15  P. v. McCabe CA3

**<u>NOT TO BE PUBLISHED</u>**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C074110 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR83744) |
| v. | |
| RYAN SCOTT McCABE, | |
| Defendant and Appellant. | |

Defendant Ryan Scott McCabe appeals his conviction for being a felon in possession of a firearm.  He contends this conviction violates the Second Amendment.  We disagree and shall affirm the conviction.  Defendant also contends he is entitled to additional presentence custody credits.  We remand the matter to the trial court for a factual determination of whether, and when, defendant was delivered into the custody of the Department of Corrections and Rehabilitation (CDCR).  Defendant's last contention is that the abstract of judgment requires correction to clearly indicate that the first abstract

1

of judgment issued in case No. NCR83093 is no longer in effect given the resentencing of defendant in case No. NCR83744. The People agree the abstract should be clarified. We will order the trial court to correct the abstract.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of July 12, 2011, defendant shot Charles Shirer in the leg with a small semiautomatic pistol. At the time, defendant had a prior felony conviction. Just prior to the shooting, Stephanie Allen had seen defendant pull a small semiautomatic pistol partially out of his pocket and heard him say he was going to shoot Shirer.

An information charged defendant with assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)),[1] with an allegation he personally used a firearm (§ 12022.5, subd. (a)), and possession of a firearm by a felon (former § 12021, subd. (a)(1)).[2] The information also alleged defendant had a prior serious felony conviction (§§ 667, subd. (a)(1), 1170.12) and two prior prison terms (§ 667.5, subd. (b)). A jury found defendant guilty of misdemeanor assault, as a lesser included offense, and guilty of being a felon in possession of a firearm. In bifurcated proceedings, defendant admitted the prior serious felony conviction and prior prison term allegations.

The trial court sentenced defendant to the doubled upper term of six years for being a felon in possession of a firearm, plus two years for the prior prison terms, and a six-month concurrent term on the misdemeanor assault. In addition, he was resentenced on a prior case, case No. NCR83093, a conviction for felony evading an officer (Veh. Code, § 2800.2, subd. (a)), to a consecutive 16-month term (one-third the midterm

---

[1] Undesignated statutory references are to the Penal Code.

[2] Former section 12021 was repealed operative January 1, 2012. The statutory prohibition against a felon possessing a firearm is now found in section 29800. (Stats. 2010, ch. 711, § 6, operative Jan. 1, 2012). For analysis of the issue raised by defendant, we will refer to the currently operative section 29800.

doubled).  The trial court calculated defendant had 1,040 days of presentence credit (693 actual days and 347 conduct credit) under section 4019.

## DISCUSSION

### I.  Second Amendment Claim

Relying on the United States Supreme Court's decision in *District of Columbia v. Heller* (2008) 554 U.S. 570 [171 L.Ed.2d 637] (*Heller*), defendant contends his possession of a firearm was protected by the Second Amendment, and therefore his conviction for being a felon in possession of a firearm violates the Second Amendment. He argues section 29800 violates the Second Amendment on its face.  It does not.

"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084)  "If a statute is constitutional in its general and ordinary application, the statute is not facially unconstitutional merely because 'there might be some instances in which application of the law might improperly impinge upon constitutional rights.' (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th. 307, 347.)" (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1373.)

The Second Amendment provides:  "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." (U.S. Const., 2d Amend.)

In *Heller*, the high court evaluated the meaning of the Second Amendment, and concluded the constitutional right to possess firearms was not limited to possession for military use and included an individual's right to possess firearms in the home for self-defense. (*Heller, supra*, 554 U.S. at pp. 571-574, 591, 634-636.)  But the court stated, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." (*Id.* at

p. 626 (maj. opn. of Scalia, J.).) The right does not extend to any sort of confrontation nor does it extend to any type of weapon. (*Id.* at pp. 595, 625-626.) Rather, it is a right to possess and carry weapons "typically possessed by law-abiding citizens for lawful purposes." (*Id.* at p. 625.) The court specifically noted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places . . . ." (*Id.* at pp. 626-627.) The court further explicitly recognized "the problem of handgun violence in this country," and confirmed that the "Constitution leaves . . . a variety of tools for combating that problem . . . ." (*Id.* at p. 636.)

In *McDonald v. City of Chicago* (2010) 561 U.S. 742 [177 L.Ed.2d 894] (*McDonald*) the court held the Second Amendment right is applicable to the states through the due process clause of the Fourteenth Amendment, but " 'repeat [ed] [its] assurances' that 'the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" ' " and reiterated "that its holding 'did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill . . . ." ' (*McDonald*, *supra*, at p. 786, quoting *Heller*, *supra*, 554 U.S. at p. 626 [171 L.Ed.2d at p. 678].)" (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1555.)

Defendant attempts to minimize the impact of this language by dismissing it as dicta. As have other courts, we construe the *Heller* language not as dicta, but as a limitation on *Heller*'s holding that individuals have a right to possess weapons under the Second Amendment of the federal Constitution. (See, e.g., *United States v. Huet* (3d Cir. 2012) 665 F.3d 588, 600, fn. 11; *United States v. Barton* (3d Cir. 2011) 633 F.3d 168, 171; *United States v. Rozier* (11th Cir. 2010) 598 F.3d 768, 771, fn. 6; and *United States v. Vongxay* (9th Cir. 2010) 594 F.3d 1111, 1115.) In any event, whether dictum or not, *Heller*'s declaration of presumptively lawful prohibitions comes in a United States

4

Supreme Court decision and must therefore be taken seriously in every Second Amendment case to which it might be relevant. (See *United States v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 90, fn. 5; see also *United States v. Serawop* (10th Cir. 2007) 505 F.3d 1112, 1122 ["[W]e are ' "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." ' "].) *Heller*'s phrase "nothing in [its] opinion should be taken to cast doubt" (*Heller*, *supra*, 554 U.S. at p. 626) is strongly worded and leaves no room for defendant's argument that the exceptions *Heller* recognizes for certain traditional firearms regulations are inconsistent with the rest of the opinion.

California cases have followed the same approach. In *People v. Delacy* (2011) 192 Cal.App.4th 1481 (*Delacy*), the First Appellate District, Division One, upheld the defendant's convictions for unlawful firearm and ammunition possession where the firearms and ammunition were found during probation searches of the defendant's home. (*Id.* at p. 1486.) There, the defendant challenged the constitutionality of former section 12021, subdivision (c)(1), which prohibited the possession of firearms by persons convicted of specified misdemeanors. (*Id*. a p. 1488.) The court explained, "there is a significant difference between the D.C. handgun ban and [former] section 12021. The D.C. statute was one of general application that did not fit within the traditional regulations described by *Heller* as 'presumptively lawful.' [Citation.] In contrast, as [*People v. Flores* (2008) 169 Cal.App.4th 568] held, [former] section 12021 is analogous to a prohibition on felon weapon possession, a type of restriction expressly listed by *Heller* as untouched by its holding. Relying on this reasoning, both California and federal decisions have upheld the type of 'presumptively lawful' regulations identified in *Heller*, including prohibitions on firearm possession by certain 'disqualified' persons, without applying constitutional scrutiny that balances the objectives of the statute against the means used to accomplish those ends." (*Delacy*, at p. 1489.)

5

Because defendant's conduct falls outside the scope of the Second Amendment's protection, we need not balance the objectives of the statute against the means used to accomplish those ends. (*Delacy*, *supra*, 192 Cal.App.4th at p. 1489.) Like the *Delacy* court, we conclude *Heller* did not "intend[ ] to open felon-in-possession prohibitions and similar categorical weapons possession bans to constitutional means-end scrutiny. On the contrary, following virtually all other federal and California appellate courts, we read *Heller*'s 'presumptively lawful' language to do just the opposite." (*Delacy*, *supra*, at pp. 1491-1492.)

## II. Calculation of Custody Credits

Defendant contends the trial court erred in the calculation of his custody credits. He claims he is entitled to 668 days of presentence credit for the period from May 14, 2012, to June 10, 2013. Specifically, he argues that since he was never delivered into the custody of the Director of Corrections, he never started serving his prison sentence in case No. NCR83093; rather, he remained in pretrial custody.

### A. *Background*

*Case No. NCR83093*

On March 22, 2012, defendant pleaded guilty to felony evasion (Veh. Code, § 2800.2, subd. (a)) and admitted a prior strike (Pen. Code, § 1170.12, subds. (a)-(d)). Defendant agreed to waive all presentence credit accrued until the day of his plea. On May 14, 2012, the trial court sentenced defendant to six years in prison. The trial court awarded defendant 80 days of presentence custody credit (54 actual and 26 conduct). The abstract of judgment remanded defendant to the custody of the sheriff "forthwith" to be delivered to "the reception center designated by the director of the California Department of Corrections and Rehabilitation."

6

*Case No. NCR83744*

On March 23, 2012, the day after defendant pleaded guilty in case No. NCR83093, the People filed a complaint in case No. NCR83744, charging defendant with numerous offenses, including possession of a firearm by a felon. Defendant remained in custody and appeared regularly at the trial proceedings. On March 14, 2013, a jury found defendant guilty of being a felon in possession of a firearm and misdemeanor assault, and defendant admitted a prior serious felony conviction and prior prison term.

On June 10, 2013, the trial court imposed sentence in case No. NCR83744 and resentenced defendant in case No. NCR83093. As noted previously, in case No. NCR83744, the trial court sentenced defendant to a six-year term on the possession of a firearm count, six months on the misdemeanor assault, plus two years on the prison priors. In case No. NCR83093, the trial court imposed a consecutive 16-month term.

At the sentencing hearing, defense counsel indicated defendant's prison commitment in case No. NCR83093 "has been hanging fire" waiting on the resolution of case No. NCR83744. The probation report indicated defendant was not entitled to confinement credit in case No. NCR83744. "He was arrested on July 19, 2011, not only for the present offense but for the crimes in Case NCR83093, for which he is currently serving a prison term (albeit at the moment in the county jail). All prior confinement credit from July 19, 2011 to the day of sentencing on May 14, 2012 was awarded in that case."

The trial court indicated it believed probation was correct that defendant was serving time on case No. NCR83093 while in custody during pretrial proceedings and trial on case No. NCR83744. The trial court noted the credits needed to be updated, as of the date of sentencing, and found defendant was entitled to 693 days of actual credit and 347 conduct credits, for a total of 1,040 days of credit.

7

## B. *Analysis*

"The term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant into the custody of the Director of Corrections at the place designated by the Director of Corrections as a place for the reception of persons convicted of felonies." (§ 2900, subd. (a).)

"A judgment of imprisonment must direct that the defendant be delivered to the Director's custody at a designated state prison. (§ 1202a.) Upon receipt of a certified abstract of the judgment, the sheriff must deliver the defendant to prison authorities. (§ 1216.) Once so delivered, the defendant 'shall be imprisoned until duly released according to law.' (§ 2901.) Service of the sentence commences upon such delivery (§ 2900, subd. (a)), and time thereafter served in an institution designated by the Director 'shall be credited as service of the term of imprisonment' (*id*., subd. (c)). The agency to which the defendant is committed, not the trial court, has the responsibility to calculate and apply any custody credits that have accrued between the imposition of sentence and physical delivery of the defendant to the agency. (§ 2900.5, subd. (e).)" (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30-31 (*Buckhalter*).) "These statutes instruct that delivery, the physical act of transporting the defendant to a state penal institution, is what triggers the running of a prison sentence. After sentencing and before delivery, the defendant's custody is considered presentence time to be credited against the actual prison term. Logically, a person cannot be 'confined in a state prison' until he has been 'delivered' to a state prison." (*People v. Holdsworth* (1988) 199 Cal.App.3d 253, 258.)

In *Buckhalter*, the defendant was sentenced, committed, and delivered to state prison. Upon remand from the court of appeal for resentencing, he was transported from prison to local custody for the further proceedings. (*Buckhalter*, *supra*, 26 Cal.4th at pp. 24-26.) The trial court, in calculating credits, refused to award additional time and good behavior credits for the period the defendant was confined in a local facility awaiting the remand hearing, concluding that he was still under the jurisdiction of the

8

Department of Corrections during that period. (*Id*. at pp. 26-27.) On review in the Supreme Court, the defendant argued that his credits, by virtue of the remand order, should have been calculated up to the time of the resentencing as having been entirely presentence custody. (*Id.* at p. 28.) The high court rejected that position and held that "a convicted felon who has once been sentenced, committed, and delivered to prison, who received all credits for confinement prior to the original sentencing, and who remains behind bars pending an appellate remand solely for correction of sentencing errors, is not eligible to earn additional credits for good behavior as a presentence detainee." (*Id*. at p. 29.) It reasoned that "an appellate remand solely for correction of a sentence already in progress does not remove a prisoner from the Director's custody or restore the prisoner to presentence status as contemplated by section 4019. . . . [A] defendant's temporary removal from state prison to county jail as a consequence of the remand did not transform him from a state prisoner to a local presentence detainee. When a state prisoner is temporarily away from prison to permit court appearances, he remains in the constructive custody of prison authorities and continues to earn sentence credit, if any, in that status." (*Id*. at p. 33.)

Similarly, in *People v. Johnson* (2004) 32 Cal.4th 260, the defendant had been convicted, sentenced to imprisonment, and delivered into the custody of the Department of Corrections. (*Id*. at p. 264.) After delivery, "the trial court ordered [the] defendant to be produced and returned to the sheriff's custody," and on the date of the rehearing, it recalled the sentence and resentenced the defendant. (*Ibid*.) The trial court refused to grant the defendant presentence conduct credit pursuant to section 4019 for the period between his original sentencing to the time of resentencing. (*Johnson*, at p. 264.) The Supreme Court rejected the defendant's contention that the recall of the sentence had the effect of voiding the initial sentence and that he should therefore be considered under the presentence custody credit scheme. (*Id*. at p. 265.) The high court relied on its holding

in *Buckhalter*, and concluded: "The trial court here recalled the sentence solely for correction of a prison sentence already in progress and reimposed a state prison sentence at the recall hearing. As with an appellate remand solely for correction of a sentence already in progress, a recall of sentence does not remove a prisoner from the Director's custody or restore the prisoner to presentence status as contemplated by section 4019." (*Johnson*, at p. 267, citing *Buckhalter*, *supra*, 26 Cal.4th at pp. 29-30, 32-34, 40.)

Neither *Johnson* nor *Buckhalter* stand for the proposition that a defendant who is convicted and sentenced but *not* delivered into the CDCR's custody is nonetheless serving his prison term while in local custody. To the contrary, the fact of the actual delivery to prison authorities was a critical requirement in both cases, as actual delivery was what commenced the running of the prison term. In both *Johnson* and in *Buckhalter*, the defendants had been physically transferred to prison officials after initial sentencing and the term of each defendant had thus commenced within the meaning of section 2900, subdivision (a); their constructive custodial status as a prisoner stemmed from the fact of this original delivery to the prison authorities after sentencing.

The People ignore this essential requirement of delivery to commence a prison term. The above authorities make clear that the commencement of the term of imprisonment requires an actual delivery of the defendant to the CDCR. The abstract of judgment, and section 1216, requires the sheriff to deliver the defendant to prison upon receipt of the abstract. The record on appeal does not contain jail records or records from the sheriff's department. On the record before us, we cannot determine when or if defendant was actually delivered to prison authorities. This is a factual question best determined by the trial court.[3] Accordingly, we will remand the matter to the trial court

---

[3] We asked the parties for supplemental briefing on the effect, if any, of defendant's parole violation and hearing on August 3, 2011—at which he received 12 months based on a "new" offense—on the issue of his entitlement to presentence custody credits. It is

for a determination of whether and when defendant was delivered to prison authorities in case No. NCR83093. The trial court shall then recalculate defendant's presentence credits accordingly.

### III. Abstract of Judgment

Defendant also contends the abstract of judgment requires clarification, as it does not clearly indicate that one of the sentenced counts is the prior conviction from case No. NCR83093. At oral argument, the People agreed the abstract of judgment could be clearer. We will order the trial court to correct the abstract of judgment.

The trial court imposed a three-year sentence on case No. NCR83093 on May 14, 2012. Following defendant's conviction in case No. NCR83744, on June 26, 2013, the trial court imposed a six-year term in case No. NCR83744 and, pursuant to section 1170.1, resentenced defendant to a consecutive 16-month term in case No. NCR83093. The only reference in the June 26, 2013 abstract to case No. NCR83093 is as an incomplete consecutive sentence. The June 26, 2013 abstract of judgment does not identify the 16-month consecutive sentence as the sentence in case No. NCR83093-B. We will order the trial court to correct the abstract of judgment to make clear that defendant was resentenced in case No. NCR83093-B and therefore, the abstract of judgment issued on May 31, 2012 is no longer in effect.

### DISPOSITION

The matter is remanded to the trial court for further proceedings to determine if, and when, defendant was delivered to the CDCR in case No. NCR83093 and to calculate defendant's presentence custody credits accordingly. The trial court is ordered to correct

---

unclear whether defendant was returned to prison for any period between August 3, 2011, and August 3, 2012, for the parole violation. This may be another factor relevant on the issue of delivery.

11

the June 26, 2013 abstract of judgment in case No. NCR83744 to list case No. NCR83093 as case "-B," to correct count "1N" to "1B" in item No. 1 of the abstract, and to reflect that due to resentencing, the abstract issued May 31, 2012, in case No. NCR83093, is no longer operative.  In all other respects, the judgment is affirmed.  A certified copy of the corrected abstract shall be sent to the CDCR.


       BUTZ       , J.


We concur:


     RAYE     , P. J.


     BLEASE    , J.

12