Filed 2/27/23  Golu v. Linges CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DORIAN GOLU,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEPHEN LINGES,<br><br>    Defendant and Appellant. | D079328<br><br><br>(Super. Ct. No. 37-2021-00008530-CU-HR-EC) |

APPEAL from an order of the Superior Court of San Diego County, Alana Robinson, Judge.  Affirmed.

The Law Offices of Gastone Bebi and Gastone Bebi for Defendant and Appellant.

Mazur & Mazur and Janice R. Mazur for Plaintiff and Respondent.


## INTRODUCTION

Dorian Golu and Stephen Linges live on the same street and, following a confrontation between the two of them, they each filed petitions for a civil harassment restraining order, pursuant to Code of Civil Procedure

section 527.6.[1]  After an evidentiary hearing, the trial court granted Golu's petition and denied Linges's petition.  On appeal, Linges challenges only the trial court's order granting Golu's petition.  He asserts substantial evidence did not support the issuance of the restraining order, "irregularities" in the hearing deprived him of a fair hearing, and the related firearm prohibition violated his rights under the Second Amendment to the United States Constitution.  We reject these contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Golu petitioned for a civil harassment restraining order against Linges, seeking protection from Linges on behalf of himself and his teenage son, pursuant to section 527.6.  Linges filed a timely response, and also his own petition for a restraining order against Golu.  The trial court held an evidentiary hearing on both petitions, during which the parties called witnesses and presented the following evidence.[2]

Golu and Linges are neighbors who live less than a quarter mile apart from each other on the same street.  Their street is a two-lane road that has no sidewalks for pedestrians.  One morning, Golu was driving his son to school, when he encountered a group of three individuals and their dogs on

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure.

[2]    Because the evidentiary hearing was not reported, Linges filed a proposed settled statement as the record of the proceedings.  Golu filed a response and requested changes to the proposed settled statement.  The trial court then certified the settled statement with the changes requested by Golu as "an accurate summary of the testimony and other evidence that is relevant to the appellant's reasons for appeal."  (See Cal. Rules of Court, rule 8.137(b)(1).)  Our summary of the evidence is taken from the settled statement.

2

the right side of the street. As he approached the group, Golu steered his car slightly away from them, towards the middle of the road, and onto the double yellow line. As he passed the group, he did not slow down. Members of the group estimated that Golu was driving 35 miles per hour.

After passing the group, Golu approached Linges, who was on the street approximately 30 yards beyond the group and on the edge of the road, facing Golu's car. Golu did not slow down as he approached and passed Linges. As Golu passed Linges, Linges threw a glove at Golu's car. It landed on Golu's windshield and bounced off. Golu stopped his car in the middle of the road and got out. He intended to check for damage to his car, inspect the glove, and ask Linges why he threw the glove.

As Golu walked towards the rear of his car, Linges went to collect his glove. At this moment, Linges approached Golu aggressively, shouted at him, and began to push and jab Golu's chest with his right hand. Golu backed up while blocking Linges's blows, retreated to his car, and got his cell phone. Linges yelled that Golu "is 'going to jail' " and that " 'next time it won't be a glove.' "

Golu called the police the same day and filed a report of the incident. Neither of the men were arrested. Golu provided the police with an audio and video recording of the incident from his car's dash camera, which the trial court received into evidence and viewed.[3]

---

[3] At the hearing, Linges asserted the video may have been edited and that there were different sets of video recordings, but Golu confirmed the video recordings he submitted to the court were the same ones he provided to opposing counsel. Linges also objected to the admission of the video recordings on the grounds that "they were edited." The trial court overruled his objection, and Linges does not challenge the evidentiary ruling on appeal.

At the conclusion of the evidence, the trial court found Golu had proven by clear and convincing evidence that he was the victim of civil harassment, on two grounds. First, the court found Linges had engaged in an act of unlawful violence by throwing an object and hitting Golu's moving car in the windshield. Second, the court found Linges made a credible threat of violence by jabbing his finger at Golu's chest while advancing on Golu, and saying, "Next time it won't be a glove[.]" The court determined that Linges was not excused from throwing an object at Golu's moving car even if Golu was speeding. The court also found Golu had proven by clear and convincing evidence that great or irreparable harm would result if the restraining order was not granted, because the parties are neighbors who will likely encounter each other again and Linges still harbors a lot of hostility towards Golu.

Accordingly, the trial court issued a five-year restraining order against Linges for the protection of both Golu and his son. The restraining order required Linges to not harass or contact Golu and his son, and to stay at least 100 yards away from them. The court further ordered that Linges cannot own or possess any firearms and that he sell or relinquish to the police any firearm he possessed.

The trial court found Linges had failed to meet his burden for the issuance of a restraining order against Golu, and denied his petition.

Linges then filed a motion for new trial and Golu filed a motion for attorney fees. At a subsequent hearing on the motions, the trial court denied Linges's motion for a new trial and awarded Golu $4,700 in attorney fees.

## DISCUSSION

On appeal, Linges does not challenge the court's finding that he failed to meet his burden for the issuance of a restraining order for his protection

4

and the denial of his petition against Golu.  He appeals only the trial court's issuance of a restraining order against him.

Here, Linges contends his appeal raises seven issues, specifically:  (1) whether the facts are "legally sufficient" to constitute civil harassment within the meaning of section 527.6, which he asserts must be reviewed de novo; (2) whether Golu proved by clear and convincing evidence that Linges's acts will be repeated in the future; (3) whether the trial court "improperly accept[ed] facts" he contends were "blatantly contradict[ed]" by the video evidence; (4) whether Golu established there was a credible threat of violence towards him or his son; (5) whether there was sufficient evidence to include Golu's son as a protected party; and (6) whether " '[i]rregularities' " in the proceedings denied him a fair trial; and (7) whether the court's order infringes his Second Amendment right to bear firearms.  We discuss, and reject, each of these contentions.

## I.

### *Principles of Appellate Review*

We begin with the fundamental rule of appellate review that an appealed judgment is presumed correct.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham,* at p. 564.)  If the judgment or order is correct on any theory, the appellate court will affirm it. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776–777.)

An appeal is not a second trial.  The role of an appellate court is to determine whether any error occurred, and if so, whether there is prejudicial error, or put differently, error which affected the outcome of the proceeding.

Absent a showing of error and prejudice, a reviewing court cannot remand a matter for a new hearing, even if the appellant believes he or she could prevail if given a second chance.  (See *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Additionally, when reviewing an appellate record, we do not reweigh the evidence.  (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 (*Curcio*).)  We are required to "resolve all factual conflicts and questions of credibility" in the prevailing party's favor and uphold the trial court's finding "if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Schild*).)  An appellate court " ' "must *presume* that the record contains evidence to support every finding of fact[.]" ' [Citations.]  It is the appellant's burden . . . to identify and establish deficiencies in the evidence.  [Citation.]  This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

II.

*The Trial Court's Issuance of a Restraining Order Against Linges*
*Was Proper Under Section 527.6*

A.    *Section 527.6*

The parties sought restraining orders under section 527.6, which permits a court to issue a protective order against a person who has engaged in "harassment."  (§ 527.6, subd. (a); see *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188–189.)  " 'Harassment' " under this statute means "unlawful violence, a credible threat of violence, *or* a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  (§ 527.6, subd. (b)(3), italics added.)  The purpose of section 527.6 " 'is to prevent future harm to the

6

applicant by ordering the defendant to refrain from doing a particular act.' " (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1266.)  Thus, "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

Before issuing a protective order, a trial court must find clear and convincing evidence that unlawful harassment occurred and is likely to recur in the future.  (§ 527.6, subd. (i).)  A court's findings whether this burden of proof has been met will be affirmed if supported by substantial evidence. (*Harris*, *supra*, 248 Cal.App.4th at p. 497.)  In applying the substantial evidence test to a court's findings reached under the clear-and-convincing burden of proof, we evaluate the evidence under a "heightened degree of certainty." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 997.)  Under this rule, we must consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it *highly probable* that the fact was true." (*Id.* at pp. 995–996, italics added.)  In conducting this review, we apply the usual rules for evaluating the record. We must "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

B.     *Analysis*

Linges's first five contentions are essentially a single challenge to the sufficiency of the evidence to support the trial court's issuance of a restraining order against him, a challenge we reject.  We conclude the court's findings and order were supported by substantial evidence.

7

The trial court found that Linges engaged in unlawful harassment based on evidence that Linges threw an object at Golu's moving car and it hit the windshield. This fact was not disputed. Linges admitted he "flipped his leather glove at the vehicle in an attempt to ward the vehicle off." Further still, the court stated that it reviewed the video evidence "multiple times," and our review of the video evidence supports the court's finding that Linges threw his glove at Golu's moving car. The court found that "[w]hen an object unexpectedly hits a driver's windshield, it is unpredictable how the driver will react. Therefore, the act of throwing an object at a moving car is very dangerous and an act of unlawful violence." Substantial evidence supported the court's finding of unlawful harassment, which includes unlawful violence and is defined as any assault or battery, sufficient for the issuance of a restraining order. (§ 527.6, subd. (b)(7).)

The trial court also found clear and convincing evidence that Linges made a credible threat of violence against Golu based on evidence that Linges jabbed his finger at Golu's chest while aggressively advancing towards Golu, and saying, " 'Next time it won't be a glove.' " Again, this fact was not disputed. Linges admitted he "walked towards" Golu and yelled at Golu, " 'next time it won't be a glove.' " The court thus found "Golu proved by clear and convincing evidence that . . . Linges was the aggressor." There was substantial evidence, including the video evidence, to support the court's findings that Linges engaged in unlawful harassment, which includes a credible threat of violence and is defined as a knowing and willful statement that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose. (§ 527.6, subd. (b)(2).)

8

Finally, the trial court found the evidence demonstrated these confrontations were likely to continue without a protective order. The court found the "[t]estimony was uncontroverted that the parties are neighbors" and concluded "it is likely the parties will encounter each other again." The court also found "[t]he evidence at the hearing made clear that . . . Linges harbors a lot of hostility toward . . . Golu and even threatened him." These facts are sufficient to support the trial court's finding by clear and convincing evidence that great or irreparable harm would result if the restraining order was not granted. (§ 527.6, subd. (d).)

Linges's arguments that the evidence was insufficient, including his claim the video evidence contradicts Golu's version of the events, misunderstands our role in reviewing the trial court's findings. We do not reweigh the evidence or the trial court's credibility determinations. (*Curcio*, *supra*, 47 Cal.App.5th at p. 12.) We are required to "resolve all factual conflicts and questions of credibility" in the prevailing party's favor and uphold the trial court's findings "if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild*, *supra*, 232 Cal.App.3d at p. 762.) Thus, Linges's discussion of *his* version of the facts does not establish a basis to reverse the court's order. That is because " ' "[w]e must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment." ' " (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) If substantial evidence supports the judgment—and we conclude it does—"reversal is not warranted even if facts exist[ed] that would support a contrary finding." (*Curcio*, at p. 12.)

Lastly, Linges asserts there was insufficient evidence to support the trial court's inclusion of Golu's son as a protected party. We disagree. In the

9

court's discretion, and *on a showing of good cause*, a restraining order issued under section 527.6 may include other named family or household members. (§ 527.6, subd. (c).)  Here, it was not disputed that Golu's son was in the car when Linges threw an object at it.  Further still, the court's findings that the parties will likely encounter each other again because they are neighbors also apply to Golu's son.  This is a sufficient showing of good cause to support the inclusion of Golu's son as a protected party.  (See *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1234 [inclusion of plaintiff's son as protected person under section 527.6, subd. (c), was proper]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 652 [trial court has discretion to issue a temporary restraining order that includes other named family or household members upon a showing of good cause].)

III.

*Linges's Remaining Arguments Lack Merit*

Linges contends there were " 'irregularities' " during the evidentiary hearing that denied him a fair trial.  In his motion for a new trial, he asserted technical difficulties had occurred during the remote hearing, that he was unable to present video evidence using a "360-degree" feature, and that the court reviewed the video evidence outside the presence of counsel.  The court determined that Linges failed to "state what prejudices he suffered or that the glitches affected the outcome of the hearing."

On appeal, Linges again fails to identify any specific prejudice he suffered from these purported irregularities.  Here, "[o]ur duty to examine the entire cause arises when and only when the appellant has fulfilled his [or her] duty to tender a proper prejudice argument.  Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his [or her] brief exactly how the

10

error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105–106; accord *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802.) As we have discussed, it is a fundamental rule of appellate review that "a trial court judgment is ordinarily presumed to be correct." (*Jameson, supra,* 5 Cal.5th at pp. 608–609.) A corollary of that rule is an issue is deemed waived where the appellant fails to support its claim by argument, discussion, analysis or citation to the record. (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775.) Because Linges fails to articulate how the asserted error resulted in prejudice, we deem the argument waived.

Finally, Linges asserts the trial court's order prohibiting him from owning or possessing any firearms violated his Second Amendment right to bear arms. We disagree. In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court recognized and affirmed certain traditional limitations on the right to bear arms, even though it struck down the District of Columbia handguns ban. In *Heller,* the high court "identified an expressly nonexclusive list of 'presumptively lawful regulatory measures,' stating 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' " (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1487–1488 (*Delacy*) [upholding constitutionality of former Pen. Code, § 12021, subd. (c)(1), which prohibited possession of firearms by persons convicted of specified misdemeanors].)

The Supreme Court's most recent opinion addressing the Second Amendment, *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. \_\_\_ [142 S.Ct. 2111, 213 L.Ed.2d 387], does not disturb this list of

11

"presumptively lawful regulatory measures" identified in *Heller*. Justice Alito explained in his concurring opinion that the Court's holding in *Bruen* "decides nothing about who may lawfully possess a firearm," and nor has it "disturbed anything that [was] said in *Heller . . .* about restrictions that may be imposed on the possession or carrying of guns." (*Bruen*, at p. 2157 (conc. opn. of Alito, J.).) Similarly, Justice Kavanaugh underscored in his concurring opinion that Supreme Court precedent, including *Heller*, has established "the Second Amendment 'is neither a regulatory straightjacket nor a regulatory blank check. . . . Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (*Bruen,* at p. 2162 (conc. opn. of Kavanaugh, J.) [citing *Heller*, *supra,* 554 U.S. at p. 636].)

Section 527.6, subdivision (u)(1), provides, "A person subject to a protective order issued pursuant to this section shall not own, possess, purchase, receive, or attempt to purchase or receive a firearm or ammunition while the protective order is in effect." Subdivision (u)(2) of section 527.6 further provides, "The court shall order a person subject to a protective order issued pursuant to this section to relinquish any firearms the person owns or possesses pursuant to Section 527.9." This statute is analogous to a prohibition on felon weapon possession, a type of restriction expressly listed by *Heller* as untouched by its holding. (See *Delacy*, *supra*, 192 Cal.App.4th at p. 1489; see also *United States v. Luedtke* (E.D.Wis. 2008) 589 F.Supp.2d 1018, 1021 [18 U.S.C. § 922(g)(8), which criminalizes possession of firearms and ammunition by persons subject to a domestic violence injunction, is a regulation of the type "that pass[es] constitutional muster" as "traditionally permitted in this nation"].)

Indeed, courts have found that "[r]educing domestic violence is a compelling government interest [citation], and [a] temporary prohibition,

while the [restraining] order is outstanding, is narrowly tailored to that compelling interest." (*United States v. Knight* (D.Me. 2008) 574 F.Supp.2d 224, 226, fn. omitted [discussing constitutionality of 18 U.S.C. § 922(g)(8)].) "[A]nger management issues may arise in domestic settings," and a firearm restriction in such cases "is thus a temporary burden during a period when the subject of the order is adjudged to pose a particular risk of further abuse." (*United States v. Mahin* (4th Cir. 2012) 668 F.3d 119, 125 [discussing constitutionality of 18 U.S.C. § 922(g)(8)].)[4] One Court of Appeal has recognized that a similar firearm restriction in the Domestic Violence

---

[4] We acknowledge the Court of Appeals for the Fifth Circuit recently held that 18 U.S.C. section 922(g)(8) is unconstitutional in light of *Bruen*. (*United States v. Rahimi* (5th Cir. Feb. 2, 2023, No. 21-11001) 2023 U.S. App. LEXIS 2693.) However, "decisions by the federal courts of appeals are not binding on us" (*People v. Williams* (2013) 56 Cal.4th 630, 668 [federal court of appeal decisions are not binding on California courts]), and we decline to follow it.

In *United States v. Jackson*, the Western District of Oklahoma found "that the government's reliance on general historical tradition is sufficient to satisfy its burden to justify the firearm regulation of [18 U.S.C.] § 922(g)(9)." (*United States v. Jackson* (W.D.Okla. Aug. 19, 2022, No. CR-22-59-D) 2022 U.S. Dist. LEXIS 148911 [18 U.S.C. § 922(g)(9) concerns the prohibition of firearms to persons with a prior misdemeanor crime of domestic violence].) In reaching that conclusion, the district court explained, "the Supreme Court has repeatedly addressed the reach of [18 U.S.C.] § 922(g)(9) without questioning its constitutionality. Most recently, in *Voisine v. United States* [(2016) 579 U.S. 686, 692]), the Court held that the statute applies to a misdemeanant who was convicted under an assault statute that encompasses 'reckless' conduct. In that case, Justice Thomas opined in dissent that the majority's construction of the statute rendered it unconstitutional, but no other justice joined this part of his opinion or endorsed this view. . . . Under the circumstances currently presented, where the effect of the Supreme Court's decision in *Bruen* on longstanding criminal prohibitions such as [18 U.S.C.] § 922(g) remains unclear, this Court declines to hold that [18 U.S.C.] § 922(g)(9) violates the Second Amendment." (*Jackson*, at p. *8.)

13

Prevention Act (Fam. Code, § 6200 et seq.) "is analogous to a prohibition on felon weapon possession, a type of restriction expressly listed by *Heller* as untouched by its holding." (*Altafulla v. Ervin* (2015) 238 Cal.App.4th 571, 581.) The same reason extends here to the firearm restriction in section 527.6.

In sum, we reject Linges's constitutional claims. We conclude Linges has failed to identify any basis on which we should reverse the trial court's issuance of the restraining order against him.

DISPOSITION

The order is affirmed. Golu shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

14