Filed 3/11/25  P. v. Scott CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ORVILLE MARQUIS SCOTT,<br><br>      Defendant and Appellant. | A168721<br><br>(City and County of San Francisco Super. Ct. Nos. SCN235286, CT22004565) |

Defendant Orville Marquis Scott appeals his conviction for possessing a firearm as a convicted felon under Penal Code[1] section 29800.  He contends his conviction violates his equal protection rights and the Second Amendment.  We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The San Francisco District Attorney filed a second amended information charging Scott with attempted first degree residential robbery (§§ 211, 664; count 1); first degree residential burglary (§ 459; count 2); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3); carrying of a loaded firearm by a convicted person (§ 25850, subd. (a); count 4); assault with a firearm (§ 245, subd. (a)(2); counts 5 & 6); and receiving stolen

---

[1] All undesignated statutory references are to the Penal Code.

property (§ 496, subd. (a); count 7). The information further alleged Scott personally used a firearm during the commission of counts 1, 2, 5 and 6.

These charges arose from an attempted robbery that occurred inside a residential building. Scott threatened the victim with a gun and demanded money. The victim and his friend managed to escape and call 911. Police responded and subsequently located Scott and a handgun nearby.

Counts 3 and 4 of the amended information were based on Scott's four prior felony convictions: (1) theft—stealing credit card/letter; (2) theft—greater than $500, less than $25,000; (3) theft—greater than $500, less than $25,000; and (4) delivery of a controlled substance. All four crimes occurred in Missouri, and the convictions were under Missouri state law.

Prior to trial, Scott filed a motion to dismiss the charge of possession of a firearm by a felon (count 3). Scott asserted the statutory provision at issue, section 29800, subdivision (c), violated the Equal Protection Clause of the Fourteenth Amendment because it treats individuals convicted of federal felonies differently from those convicted of Missouri felonies. The court denied the motion.

A jury found Scott guilty as to possession of a firearm by a felon (count 3) and one count of assault with a firearm (count 5). The jury also found true the personal use of a firearm enhancement on count 5. The jury deadlocked as to the remaining counts, and the court declared a mistrial.

The trial court sentenced Scott to an aggregate term of five years in state prison. However, the court suspended execution of the sentence and placed Scott on three years of probation and one year in county jail, with credit for time served. Scott timely appealed.

DISCUSSION

Scott argues his conviction for possession of a firearm by a felon must be vacated because section 29800 violates the Equal Protection clause of the Fourteenth Amendment (U.S. Const., 14th Amend., § 1) and his Second Amendment right to possess a firearm (U.S. Const., 2nd Amend.).  We disagree.

Section 29800, subdivision (a) states, in relevant part, "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."  (§ 29800, subd. (a)(1).)  Section 29800, subdivision (c) (section 29800(c)) then provides a carve-out from subdivision (a): "Subdivision (a) shall not apply to a conviction or warrant for a felony under the laws of the United States unless either of the following criteria, as applicable, is satisfied: [¶] (1) Conviction of a like offense under California law can only result in imposition of felony punishment. [¶] (2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both punishments."

## I.  Second Amendment

Scott acknowledges that since *New York State Rifle & Pistol Assn. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), California Courts of Appeal have repeatedly rejected Second Amendment challenges to section 29800.  However, Scott argues we should reach a different conclusion based on *United States v. Duarte* (9th Cir. 2024) 101 F.4th 657, judgment vacated and cause ordered to be reheard en banc, *U.S. v. Duarte* (9th Cir. 2024) 108 F.4th 786 (*Duarte*),

which concluded a federal statute prohibiting felons from possessing firearms violated the Second Amendment to the extent it encompassed "a non-violent offender like Duarte."[2] (*Id.* at pp. 676, 679, 688, 691.)

Scott specifies he is only raising an as-applied challenge to the statute, not a facial challenge. (See generally *People v. Miller* (2023) 94 Cal.App.5th 935, 940, fn. 2 [describing as-applied challenges].) He asserts that section 29800 is unconstitutional as applied to him because he has suffered only nonserious, nonviolent felony convictions.

## A. Forfeiture

Scott acknowledges he failed to raise his as-applied constitutional challenge before the trial court.

As discussed in greater detail in Part I.B., *post*, determining whether a firearm regulation is unconstitutional requires, in part, identifying a "relevantly similar" historical analogue to the regulation, taking into consideration "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." (*Bruen*, *supra*, 597 U.S. at p. 29). Because Scott only challenges the constitutionality of section 29800 under the Second Amendment as applied to his felony convictions, the relevant analysis requires an analysis of the facts of Scott's underlying felonies. (See *In re D.L.* (2023) 93 Cal.App.5th 144, 157–158 ["An 'as applied' challenge 'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected

---

[2] " '[A] decision that has been vacated has no precedential authority whatsoever.' " (*United States v. Mitchell* (D. Mont., Oct. 22, 2024, No. CR24-58-BLG-SPW) 2024 U.S.Dist. Lexis 191983, at *4.)

4

right.' "].)  However, neither the constitutionality of section 29800 as applied to Scott nor the facts of his underlying felonies were examined by the trial court.  Accordingly, Scott's as-applied challenge has been forfeited.  (*People v. Patton* (2019) 41 Cal.App.5th 934, 946 ["An as-applied constitutional challenge is forfeited unless previously raised."]; *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143–1144 [declining to consider as-applied Second Amendment challenge to firearms restriction imposed by the trial court in conjunction with domestic violence restraining order because the defendant forfeited the claim by failing to object in trial court]; cf. *People v. Anderson* (2024) 104 Cal.App.5th 577, 583 (*Anderson*) [facial challenge not forfeited because it "requires us to 'consider "only the text of the measure itself, not its application to the particular circumstances of an individual." ' "].)

Even if we were to consider the merits of Scott's argument, however, we conclude it would fail on the merits for the reasons set forth below.

## B.  Legal Framework

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  (U.S. Const., 2nd Amend.)

The United States Supreme Court has in recent years issued several landmark opinions clarifying the purpose and scope of the Second Amendment, beginning with *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*).  In *Heller*, the Supreme Court considered a set of laws banning the possession of handguns in the home and requiring that any lawful firearms in the home be disassembled or bound by a trigger lock.  (*Id.* at pp. 628–636.)  The *Heller* court invalidated these laws, holding that the Second Amendment protects the "right to possess and carry weapons in case

5

of confrontation," and "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (*Id*. at pp. 592, 635.)

Notwithstanding its recognition that the Second Amendment guarantees an individual the right to possess and carry arms, the *Heller* court warned that "the right secured by the Second Amendment is not unlimited." (*Heller*, *supra*, 554 U.S. at p. 626.) Relevant here, it cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." (*Id*. at pp. 626–627.) It noted such regulations are "presumptively lawful." (*Id*. at p. 627, fn. 26.)

Following *Heller*, the Supreme Court in *McDonald v. City of Chicago* (2010) 561 U.S. 742 (*McDonald*) concluded the Second Amendment applied to the States by incorporation through the Due Process Clause of the Fourteenth Amendment. The court reasoned that the Second Amendment is deeply rooted in the Nation's history and tradition, explaining "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller*, [the court] held that individual self-defense is 'the central component' of the Second Amendment right." (*Id*. at pp. 767–780.) However, the court again emphasized that its holding in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" (*Id*. at p. 786.)

In *Bruen*, *supra*, 597 U.S. 1, the Supreme Court invalidated a New York State law requiring an applicant for a public-carry license to demonstrate a special need for self-defense. (*Id*. at p. 11.) *Bruen* held the plain text of the Second Amendment safeguarded the right of law-abiding, adult citizens to bear arms in public for self-defense and thus presumptively protected the conduct that was regulated by the licensing scheme. (*Id*. at

6

pp. 31–33.) In reaching its holding, the court clarified the proper framework governing Second Amendment challenges to firearm regulations: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (*Bruen*, at p. 17.)

The Supreme Court then explained how courts should determine whether a regulation is consistent with "historical tradition": "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." (*Bruen*, *supra*, 597 U.S. at p. 26.) However, when a legal challenge is brought to a modern firearm regulation, the "historical inquiry that courts must conduct will often involve reasoning by analogy"—i.e., "whether the two regulations are 'relevantly similar.' " (*Id*. at pp. 28–29.) "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." (*Id*. at p. 30.)

Although the *Bruen* court invalidated the New York State law, it emphasized its opinion did not necessarily invalidate other licensing schemes if they "are designed to ensure only that those bearing arms in the

7

jurisdiction are, in fact, 'law-abiding, responsible citizens.' " (*Bruen*, *supra*, 597 U.S. at p. 38, fn. 9; see also *id.* at p. 72 (conc. opn. of Alito, J.) ["Our holding decides nothing about who may lawfully possess a firearm"]; *id.* at pp. 80–81 (conc. opn. of Kavanaugh, J.) [reiterating that bans on the possession of firearms by felons are presumptively valid regulations].)

Finally, in *United States v. Rahimi* (2024) 602 U.S. 680 (*Rahimi*), the Supreme Court applied *Bruen* to uphold a federal law prohibiting a person subject to a domestic violence restraining order from possessing a firearm if the order found the person "poses a credible threat to the physical safety of an intimate partner." (*Rahimi*, at p. 690.) The court noted the "appropriate analysis" should consider "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." (*Id.* at p. 681.) In answering this question, the court explained, "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." (*Id.* at p. 693.) "Taken together," the court stated, "the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." (*Id.* at p. 698.) Although the federal statute at issue was not "identical to . . . founding era regimes," the court held it was nonetheless constitutional because "[i]ts prohibition on the possession of firearms by those found by a court to present a threat to others fit[ ] neatly within the tradition the surety and going armed laws represent." (*Ibid*.)

Following *Bruen*, California courts of appeal have been divided on the first question of whether felons fall within the definition of "the People" who enjoy a constitutional right to keep and bear arms under the Second

Amendment. (Compare *People v. Alexander* (2023) 91 Cal.App.5th 469, 478 with *Anderson*, *supra*, 104 Cal.App.5th at p. 588.)

In *Anderson*, this Division concluded, "We see no basis for categorically excluding persons with prior felony convictions from the protections of the Bill of Rights." (*Anderson*, *supra*, 104 Cal.App.5th at p. 588.) We need not reconsider this prior holding because, assuming for purposes of this appeal that felons are included within the class of persons protected by the Second Amendment, we conclude section 29800 is valid because it is consistent with our Nation's historical tradition of firearm regulation, as discussed below.

## C. Historical Analogues

This court provided an extensive analysis of the historical tradition of firearm regulation in *Anderson*, *supra*, 104 Cal.App.5th 577 in rejecting a facial challenge to section 29800. We adopt that analysis as though it were set forth fully herein.

Here, however, Scott urges this court to differentiate between violent and nonviolent felons for the purpose of his as-applied challenge. But we do not find any precedent for doing so. Historical analogues for the prohibition on the possession of weapons by both violent *and* nonviolent felons exist and are well documented by the courts. (E.g., *Medina v. Whitaker* (D.C. Cir. 2019) 913 F.3d 152, 158 [discussing "tradition and history," which demonstrates that felons—including "non-dangerous" felons—do not have a right to bear arms under the Second Amendment]; *United States v. Ramos* (C.D. Cal., Aug. 5, 2022, No. 2:21-cr-00395) 2022 U.S.Dist. Lexis 222784, at *12 ["the Court [finds] that Section 922(g)(1), even as applied to non-violent felons, is 'consistent with this Nation's historical tradition of firearm regulation.' "]; *United States v. Blount* (S.D. Ill., Oct. 30, 2024, No. 3:23-CR-30061-NJR-1) 2024 U.S.Dist. Lexus 197580, at *7 ["throughout early

9

American history, convicted felons were subject to estate forfeiture and even capital punishment for non-violent felonies."].)  Most of the founding era laws cited by courts analyzing the scope of the Second Amendment restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes.  (*Medina*, at pp. 158–159 [nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification]; *United States v. Yancey* (7th Cir. 2010) 621 F.3d 681, 684–685 ["[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.' "].)  Accordingly, we see no basis for carving out an exception for nonviolent felons as advocated by Scott.

This conclusion is supported by the Supreme Court's numerous statements acknowledging the validity of felon disposition laws.  In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."  (*Heller*, *supra*, 554 U.S. at p. 626.)  Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid.  (*McDonald*, *supra*, 561 U.S. at p. 786.)  Then, in *Bruen*, the majority stated that its holding was "in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights.  (*Bruen*, *supra*, 597 U.S. at pp. 9, 29, 31, 38, 60, 70.)  In a concurring opinion in *Bruen*, Justice Kavanaugh "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion " 'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]' "  (*Id.* at p. 81.)  Finally, *Rahimi* once again affirmed that "many . . .

10

prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " (*Rahimi, supra*, 602 U.S. at p. 699.) The Supreme Court did not distinguish between violent and nonviolent felons in any of these cases.

Scott relies on *Duarte, supra*, 101 F.4th 657 to argue to the contrary. In *Duarte*, the Ninth Circuit rejected the proposition that felons may be categorically banned from possessing firearms. Instead, the court concluded the government must "proffer Founding-era felony analogues that are 'distinctly similar' to Duarte's underlying offenses and would have been punishable either with execution, with life in prison, or permanent forfeiture of the offender's estate." (*Id.* at p. 690; see also *id.* at p. 677 [noting " '[t]he Founding generation *had no laws* limiting gun possession by . . . people convicted of crimes . . . .' "].)

Scott's reliance on *Duarte* is both procedurally and substantively problematic. As noted above, the Ninth Circuit vacated *Duarte*, and it thus " 'has no precedential authority whatsoever.' " (*United States v. Mitchell, supra*, 2024 U.S.Dist. Lexis 191983, at *4.) Substantively, *Duarte* conflicts with the Supreme Court's repeated statements that prohibitions on firearm ownership by felons are presumptively valid. (E.g., *Heller, supra*, 554 U.S. at pp. 626–627, fn. 26 [noting "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful."]; *Rahimi, supra*, 602 U.S. at p. 699 [same].) More problematic, however, is *Duarte*'s attempt to limit the concept of dangerousness to violent felonies. "There is widespread agreement among both courts of appeals and scholars that restrictions forbidding dangerous individuals from carrying guns comport with 'this Nation's historical tradition of firearm regulation.' " (*Antonyuk v. James* (2d Cir. 2024) 120 F.4th 941, 983; accord *United States v. Jackson* (8th

11

Cir. 2024) 110 F.4th 1120, 1128 ["Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."].)  But *Duarte* does not explain why felons convicted of nonviolent crimes may not also be dangerous.  Nor does *Duarte* explain how courts should evaluate whether a felon is dangerous.

To the contrary, courts have rejected such a case-specific analysis: "[H]istory demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."  (*United States v. Jackson*, *supra*, 110 F.4th at p. 1128.)  Most recently, the Supreme Court in *Rahimi* reaffirmed this concept, emphasizing the Second Amendment did not "prohibit[ ] the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse."  (*Rahimi*, *supra*, 602 U.S. at p. 698.)  Here, the applicable category to which Scott belongs is convicted felon.  And Scott makes no effort to demonstrate his predicate felonies—theft and possession of a controlled substance for distribution—lack dangerousness.  (See, e.g., *United States v. Bullock* (7th Cir. 2011) 632 F.3d 1004, 1016 ["Drug crimes are associated with dangerous and violent behavior."]; *United States v. Hines* (N.D. Ohio, Sept. 20, 2024, No. 3:22-CR-157) 2024 U.S.Dist. Lexis 169739, at *15 ["a theft offense generally risks creating a violent confrontation between the perpetrator and victim"].)

Accordingly, we reject Scott's argument that section 29800 violates his Second Amendment right to bear arms.  We conclude, for the reasons set forth in *Anderson*, *supra*, 104 Cal.App.5th 577, that firearm ownership by felons—including Scott—comports with the United States's historical tradition of firearm regulation.  (*Id.* at pp. 589–599.)

## II. Equal Protection

Scott also contends section 29800(c) violated his right to equal protection because it impermissibly treats defendants with non-California state felony convictions differently than defendants with federal felony convictions.

### A. Applicable Law

" 'Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction.' " (*People v. Chavez* (2004) 116 Cal.App.4th 1, 4.) The equal protection clause thus directs that all similarly situated persons be treated alike. (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) " 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*Ibid.*)

Traditionally, we have engaged in a two-part inquiry to determine a violation of the guarantee of equal protection. First, courts considered whether a classification affected two or more groups that were similarly situated in an unequal manner. (*People v. Chatman* (2018) 4 Cal.5th 277, 289.) And then, if groups were "similarly situated in all material respects," whether the challenged classification was justified under the appropriate standard of review. (*Id.* at p. 289.)

Recently, the California Supreme Court eliminated the "similarly situated" first step "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection," that is, when the classification appears on the face of the law. (*Hardin, supra*, 15 Cal.5th at

13

p. 850.)  In such cases, "[t]he only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review.  The burden is on the party challenging the law to show that it is not." (*Hardin*, *supra*, 15 Cal.5th at pp. 850–851.)

In connection with this analysis, Scott contends strict scrutiny applies to the validity of section 29800(c) because it involves his "fundamental right" to bear arms.  We disagree.  As discussed in Part I., the Second Amendment permits " 'presumptively lawful regulatory measures' . . . , including 'longstanding prohibitions on the possession of firearms by felons.' " (*People v. Flores* (2008) 169 Cal.App.4th 568, 574–575, quoting *Heller*, *supra*, 554 U.S. at pp. 626–627, & fn. 26.)  Because section 29800 does not run afoul of the Second Amendment and Scott is prohibited from possessing firearms under that section, Scott cannot claim interference with a " 'fundamental' right that would invoke elevated scrutiny under the equal protection clause." (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1495 [rational basis test applicable]; accord *Williams v. North Carolina* (E.D. N.C., Aug. 13, 2021, No. 7:21-CV-104-M) 2021 U.S.Dist. Lexis 176751, at *12 [state law "subject to rational basis review" because "[t]he interest at stake is Plaintiff's ability to possess a firearm for self-defense as a felon.  That interest is not explicitly or implicitly guaranteed by the Constitution, so it is not a fundamental right."].)

Because section 29800(c) neither burdens a fundamental right nor discriminates against a suspect class, we apply rational basis review.  "Under the rational basis test, the question is whether the Legislature's differing treatment of similarly situated groups bears a fair relationship to a legitimate public purpose." (*Delacy*, *supra*, 192 Cal.App.4th at p. 1496.)  "A statute is presumed constitutional [citation] and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis

14

which might support it[ ]' [citation], whether or not the basis has a foundation in the record." (*Heller v. Doe* (1993) 509 U.S. 312, 320–321.) "In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)

## B. Analysis

As the classifications at issue appear on the face of the section 29800(c), we will apply the analysis set out in *Hardin*. And as the party challenging the law, Scott bears the burden to show the different treatment of non-California state felony convictions, such as his, and federal convictions subject to section 29800(c), is not justified.[3] (See *Hardin, supra,* 15 Cal.5th at p. 851.)

Scott has failed to meet his burden. As set forth above, no equal protection violation exists "provided the classifications are made with a legitimate goal to be accomplished." (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1483.)

The general purpose of section 29800 is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1037 [addressing legislative intent of former section 12021, the predecessor to section 29800]; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1409

---

[3] Scott asserts both a facial and as-applied challenge to section 29800(c). However, we need not address these challenges separately because our resolution of the latter disposes of the former. "If defendant cannot demonstrate that the law is unconstitutional as applied to him and others similarly situated, he has necessarily failed to demonstrate that the law is unconstitutional on its face." (*People v. Williams* (2024) 17 Cal.5th 99, 121 (*Williams*).)

[legislative intent of former section 12021 was to " ' "limit as far as possible the use of instruments commonly associated with criminal activity" ' " and presumption " 'the danger is greater when the person possessing the concealable firearm has previously been convicted of felony' "].)  Here, Scott has not demonstrated the Legislature's exclusion of certain federal felonies, but not non-California state felonies, is not rationally related to this purpose. To address the risk of improper firearm use, the Legislature may have reasonably believed assessing the risk level of non-California state felons would be unduly burdensome for courts.  Such a possible rationale finds support from the facts of this case.  For example, the records from Scott's theft convictions in Missouri lack any detail regarding valuation, which would be required for a California court to assess whether his crime qualified as a California felony.  Issues such as these may have reasonably led the Legislature to exclude non-California state felony convictions from section 29800(c).  (*Turnage, supra*, 55 Cal.4th at p. 75 ["While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice. [Citation.]  It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' "].)

Moreover, we note *Hardin* did not call into question any earlier decisions "that purported to dispose of an equal protection challenge upon deciding that the challenged disparate treatment did not involve groups that were similarly situated for the purposes of the law in question." (*Hardin, supra*, 15 Cal.5th at p. 851; see also *ibid.* ["the conclusion in each of those cases could just as well have been cast as a conclusion about whether the difference in treatment was adequately justified under the applicable standard of review."].)  And courts have generally found " ' "[p]ersons

16

convicted of different crimes are not similarly situated for equal protection purposes." ' " (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565.) Here, Scott does not identify any federal statute subject to section 29800(c) that is analogous to Missouri's felony theft statute. He thus fails to demonstrate the Legislature lacked a rational basis for finding greater culpability or imposing greater penalties for Missouri felony thefts.

Similarly, the decision not to include certain crimes within a statutory scheme generally falls within the Legislature's "line-drawing" authority as a rational choice that is not constitutionally prohibited. (E.g., *People v. Chatman*, *supra*, 4 Cal.5th at p. 283 [addressing exclusion of manslaughter from section 1170.95].) " 'It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard.' " (*Turnage, supra*, 55 Cal.4th at p. 74.) "A classification is not arbitrary or irrational simply because it is 'underinclusive.' " (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888–889.) "Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail. [Citation.] Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Turnage*, at p. 74; *Williams, supra*, 17 Cal.5th at p. 127 [" '[T]he lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime.' [Citation.] Because these 'legislative policy choices' are not 'irrational,' they are not 'impermissible as a matter of equal protection.' "].)

While Scott argues section 29800(c)'s disparate treatment of non-California state and federal felony convictions is arbitrary, he fails to identify any relevant authority supporting his position. And, to the contrary, analogous cases undermine Scott's argument. In *People v. Conley* (2004) 116

Cal.App.4th 566, the Fourth District Court of Appeal addressed the legality of section 12021, subdivision (c)(2),[4] which allowed peace officers "whose employment or livelihood [were] dependent on the ability to legally possess a firearm" to petition for relief if they were prohibited from owning or possessing firearms because of a certain convictions. (*Conley*, at p. 572.) The court considered whether the defendant's equal protection rights were violated because his conviction was not within the limited number of offenses for which relief from the firearm prohibition could be granted. (*Id.* at p. 573.) In concluding no equal protection violation existed, the court explained a rational basis existed for treating a peace officer involved in a troubled domestic relationship differently from ones who engage in criminal behavior toward strangers. (*Id.* at p. 575.)

The court also rejected the defendant's argument that the statute was both overinclusive and underinclusive: " '[I]n a case like this "perfection is by no means required." [Citations.] The provision "does not offend the Constitution simply because the classification 'is not made with mathematical nicety . . . .' " ' " (*Conley, supra,* 116 Cal.App.4th at pp. 575–576.) The court thus held "the fact that one of the eligible offenses sweeps more broadly than necessary to achieve the legislative purpose, or that other offenses could have been included that would have furthered the legislative purpose, does not undermine our conclusion that the classification adopted by

_____

[4] The Deadly Weapons Recodification Act of 2010 (§ 16000, et seq.) repealed and recodified former sections 12000 to 12809 without substantive change. (§§ 16000, 16005, 16010; *People v. Wade* (2016) 63 Cal.4th 137, 140.) All provisions in the Deadly Weapons Recodification Act are considered a continuation of the previous statutes in the Dangerous Weapons Control Law, and the Legislature explicitly stated that decisions under the former Dangerous Weapons Control Law are "relevant" in interpreting any provision under the recodification. (§§ 16010, subd. (a), 16020; *Wade*, at p. 140.)

18

the Legislature bears a fair relationship to a legitimate public purpose." (*Ibid.*)

Similarly, in *Nunez-Reyes v. Holder* (9th Cir. 2011) 646 F.3d 684, 688–689, the Ninth Circuit addressed whether Congress had a rational basis for treating immigrants found guilty of federal drug crimes more leniently than immigrants found guilty of state drug crimes. In finding rational-basis review satisfied, the court explained, "Congress could have thought that aliens whose federal charges are dismissed under the [Federal First Offender Act ("FFOA")] are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law." (*Nunez-Reyes v. Holder*, *supra*, 646 F.3d at pp. 689–690; accord *People v. Wallace* (1985) 169 Cal.App.3d 406, 408–409, 411 [defendant's prior robbery conviction constituted one-year enhancement if charged under section 667.5, subdivision (b) but a five-year enhancement if charged under section 667; prosecutor's discretion regarding which statute to use did not violate equal protection]; *U.S. v. Brucker* (7th Cir. 2011) 646 F.3d 1012, 1018 [" 'That the federal defendant may face harsher punishment than his state counterpart, or vice versa, simply does not raise equal protection concerns.' "]; *United States v. Quintero* (9th Cir. 2021) 995 F.3d 1044, 1058 ["there is no equal protection violation where the federal government treats defendants charged with federal crimes differently than a state treats defendants charged with state crimes."].)

Accordingly, Scott has failed to meet his burden of demonstrating section 29800(c) violates his equal protection rights. "[T]he equal protection clause does not prohibit a Legislature from implementing a reform measure 'one step at a time' [citation], or prevent it 'from striking the evil where it is felt most.' " (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 371.)

## DISPOSITION

The judgment is affirmed.

_____
PETROU, J.

WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.

*People v. Scott*/A168721